Nicole M. Norris (SBN 222785)
WINSTON & STRAWN LLP
101 California Street, Suite 3900
San Francisco, CA  94111-5894
Telephone:    415-591-1000
Facsimile:     415-591-1400
Email: nnorris@winston.com

James F. Hurst (*Admitted Pro Hac Vice*)
David J. Doyle (*Admitted Pro Hac Vice*)
Samuel S. Park (*Admitted Pro Hac Vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone:    312-558-5600
Facsimile:     312-558-5700
Email: jhurst@winston.com; ddoyle@winston.com; spark@winston.com

Charles B. Klein (*Admitted Pro Hac Vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C.  20007
Telephone:    202-282-5000
Facsimile:     202-282-5100
Email: cklein@winston.com

Attorneys for Defendant
ABBOTT LABORATORIES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| MEIJER, INC. & MEIJER DISTRIBUTION, INC., on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>     vs.<br><br>ABBOTT LABORATORIES,<br><br>              Defendant.<br><br>     [caption continues next page] | **No. C 07-5985 CW**<br><br>*Related Per November 30, 2007 Order to Case No. C 04-1511 CW*<br><br>**ABBOTT LABORATORIES' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT PURSUANT TO 12(b)(6)**<br><br>Date:      March 6, 2008<br>Time:      2:00 p.m.<br>Courtroom:  2 (4th Floor)<br>Judge:    Hon. Claudia Wilken |

*Winston & Strawn LLP*
*101 California Street*
*San Francisco, CA 94111-5894*

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1

ROCHESTER DRUG CO-OPERATIVE, INC., )
on behalf of itself and all others similarly )
situated, )

**No. C 07-6010 CW**

2

3

            Plaintiffs,

*Related Per December 3, 2007 Order to
Case No. C 04-1511 CW*

)
)
)
)

4

    vs.

)
)
)
)
)
)
)

**ABBOTT LABORATORIES' REPLY
BRIEF IN SUPPORT OF ITS MOTION TO
DISMISS PLAINTIFFS' CONSOLIDATED
AMENDED COMPLAINT PURSUANT TO
12(b)(6)**

5

ABBOTT LABORATORIES,

6

            Defendant.

7

)
)
)
)
)
)
)
)
)

Date:        March 6, 2008
Time:        2:00 p.m.
Courtroom:  2 (4th Floor)
Judge:       Hon. Claudia Wilken

8

9

10

LOUISIANA WHOLESALE DRUG
COMPANY, INC., on behalf of itself and all
others similarly situated,

**No. C 07-6118 CW**

*Related Per December 10, 2007 Order to
Case No. C 04-1511 CW*

)
)
)
)

11

12

            Plaintiffs,

)
)
)
)
)
)
)
)
)

**ABBOTT LABORATORIES' REPLY
BRIEF IN SUPPORT OF ITS MOTION TO
DISMISS PLAINTIFFS' CONSOLIDATED
AMENDED COMPLAINT PURSUANT TO
12(b)(6)**

13

    vs.

14

ABBOTT LABORATORIES,

15

            Defendant.

Date:        March 6, 2008
Time:        2:00 p.m.
Courtroom:  2 (4th Floor)
Judge:       Hon. Claudia Wilken

)
)
)
)
)
)

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

3

4   I.      INTRODUCTION ..................................................................................................................1

5   II.     ARGUMENT ........................................................................................................................3

6           A.      Meijer's  Summary Allegations Of Below-Cost Pricing Do Not State A Claim
                     Under *Cascade* ......................................................................................................3
7
8                   1.      The Supreme Court Requires Meijer To Show A "Plausible
                             Entitlement To Relief" At The Pleadings Stage ...........................................3

9                   2.      Meijer Has Not Plausibly Alleged That Abbott's Incremental Cost Of
10                           Producing The Lopinavir Component Of Kaletra Exceeds $1.64. ................6

            B.      Meijer's Unprecedented Allegations That Abbott Monopolized The Boosting
11                   Market Also Fail To State A Claim.............................................................................8

12  III.    CONCLUSION ...................................................................................................................12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA 94111-5894**

-i-

1

## TABLE OF AUTHORITIES

2

3

Page(s)

CASES

4

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,*
    472 U.S. 585 (1985).................................................................................................... 3, 11

5

6

*Barr Labs., Inc. v. Abbott Labs.,*
    978 F.2d 98 (3d Cir. 1992)........................................................................................... 2, 7

7

8

*Bell Atl. Corp. v. Twombly,*
    127 S. Ct. 1955 (2007)............................................................................................. passim

9

*Berkey Photo v. Eastman Kodak Co.,*
    603 F.2d 263 (2d Cir. 1979)............................................................................................ 10

10

11

*Cascade Health Solutions v. PeaceHealth,*
    --- F.3d ---, No. 05-35627, 2008 WL 269506 (9th Cir. Feb. 1, 2008) ........................... passim

12

*E.E.O.C. v. Concentra Health Services, Inc.,*
    496 F.3d 773 (7th Cir. 2007) ........................................................................................... 4

13

14

*Erickson v. Pardus,*
    127 S. Ct. 2197 (2007) .................................................................................................... 4

15

*GAF Corp. v. Eastman Kodak Co.,*
    519 F. Supp. 1203 (S.D.N.Y. 1981)............................................................................... 10

16

17

*Image Technical Services., Inc. v. Eastman Kodak Co.,*
    125 F.3d 1195 (9th Cir. 1997) ....................................................................................... 11

18

*In re Abbott Labs. Norvir Antitrust Litig.,*
    442 F. Supp. 2d 800 (N.D. Cal. 2006) ........................................................................... 11

19

20

*In re Brand Name Prescription Drugs Antitrust Litig.,*
    288 F.3d 1028 (7th Cir. 2002) ......................................................................................... 7

21

22

*In re Nokia Corp. Sec. Litig.,*
    No. 96 Civ. 3752 (DC), 1998 WL 15096 (S.D.N.Y. Apr. 1, 1998)................................... 8

23

24

*In re Petroleum Prods. Antitrust Litig.,*
    906 F.2d 432 (9th Cir. 1990) ......................................................................................... 11

25

*MetroNet Servs. Corp. v. Qwest Corp.,*
    383 F.3d 1124 (9th Cir. 2004) ....................................................................................... 11

26

27

*Monsanto Co. v. McFarling,*
    302 F.3d 1291 (Fed. Cir. 2002) ....................................................................................... 8

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

*Nintendo of Am. v. Lewis Galoob Toys, Inc.*,
    16 F.3d 1032 (9th Cir. 1994)...................................................................................... 8

*Olympia Equip. Leasing Co. v. Western Union Tel. Co.*,
    797 F.2d 370 (7th Cir. 1986) ...................................................................................... 9

*Schor v. Abbott Labs.*,
    457 F.3d 608 (7th Cir. 2006) ................................................................................... 1, 7

*Silvas v. E\*Trade Mortgage Corp.*,
    No. 06-55556, 2008 WL 239422 (9th Cir. Jan. 30, 2008) ........................................ 4

*Stearns Airport Equipment Co. v. FMC Corp.*,
    170 F.3d 518 (5th Cir. 1999) ...................................................................................... 7

*Taggart v. Rutledge*,
    657 F. Supp. 1420 (D. Mont. 1987)......................................................................... 5, 6

*Tenneco, Inc. v. United States*,
    17 Cl. Ct. 345 (Ct. Cl. 1989) ...................................................................................... 8

*Tri-State Rubbish v. Waste Mgmt.*,
    998 F.2d 1073 (1st Cir. 1993) ..................................................................................... 5

*United Magazine Co. v. Murdoch Magazines Distrib.*,
    146 F. Supp. 2d 385 (S.D.N.Y. 2001) ........................................................................ 5

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001)................................................................................... 3, 9

*United States v. Studiengesellschaft Kohle, m.b.H.*,
    670 F.2d 1122 (D.C. Cir. 1981)............................................................................. 3, 10

*United States v. Syufy Enterprises*,
    903 F.2d 659 (9th Cir. 1990) ...................................................................................... 9

*United States v. Westinghouse Elec. Corp.*,
    648 F.2d 642 (9th Cir. 1981) .................................................................................... 10

*Verizon Communications., Inc., v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004)........................................................................................ 3, 10, 11

*Warren v. Fox Family Worldwide, Inc.*,
    171 F. Supp. 2d 1057 (C.D. Cal. 2001) ..................................................................... 6

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8, 12 ................................................................... passim

Richard G. Frank, Government Commitment And Regulation Of Prescription Drugs.................. 2

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

-iii-

1

**I.     INTRODUCTION**

2          The Meijer plaintiffs (or, collectively, "Meijer") ask this Court to blindly accept their

3   conclusory below-cost allegation as true.  But this ignores the relevant pleading standard.  As the

4   Supreme Court recently made clear, mere "labels and conclusions, and a formulaic recitation of the

5   elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).

6   A plaintiff must allege "enough fact[s]" to demonstrate that the allegation is "plausible" and that

7   there is a "reasonable expectation" discovery will confirm the allegation.  (Opp'n at 10 (quoting

8   *Twombly*, 127 S. Ct. at 1965)).

9          As Abbott demonstrated in its opening brief, the Meijer amended complaint belatedly added

10  a conclusory below-cost pricing allegation – "on information and belief" – as part of a last-ditch

11  effort to avoid *Cascade Health Solutions v. PeaceHealth*, --- F.3d ---, No. 05-35627, 2008 WL

12  269506, at *12 (9th Cir. Feb. 1, 2008).  But Meijer fails to allege any facts – literally nothing – to

13  support its bald allegation of below-cost pricing.  Meijer alleges neither the purported implicit price

14  of lopinavir nor anything about pharmaceutical costs generally or about Abbott's costs in particular

15  remotely implying below-cost pricing.

16         In its opposition, Meijer attempts to remedy its complaint's deficiency by adding purported

17  facts and context that supposedly support its conclusory below-cost allegation.  But statements in an

18  opposition to a motion to dismiss are no substitute for a lack of required allegations *in the complaint*

19  *itself*.  Moreover, Meijer's opposition only confirms the implausibility of the conclusory allegation

20  in its complaint.  It relies on Abbott documents to suggest that "Kaletra's *margins* (as a percentage

21  of sales) hovered around 70% during the relevant time period (late 2003)."  (Opp'n at 17 (emphasis

22  added)).  That is the *wrong* metric because the reference to "margins" accounts for fixed costs,

23  which the Ninth Circuit specifically held are *not* to be included in the variable cost calculations that

24  must be used when determining whether pricing is below cost.  *Cascade*, 2008 WL 269506, at *18.

25         There is a reason Meijer stands alone in accusing Abbott of pricing below cost:  there are no

26  actual facts that could make the allegation plausible.  Indeed, when affirming dismissal on the

27  pleadings, the Seventh Circuit flatly rejected the notion that "the imputed price of Kaletra's lopinavir

28  component [is below] the average variable cost of its manufacture."  *Schor v. Abbott Labs.*, 457 F.3d

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

608, 611 (7th Cir. 2006). And Doe/SEIU, after years of discovery, have not accused Abbott of below-cost pricing. GSK, a party with intimate knowledge of pharmaceutical variable costs, also has not accused Abbott of below-cost pricing.

For its part, Meijer has pled no facts calling into question the widely known fact that the incremental cost of producing an additional pharmaceutical tablet is negligible compared to the cost of discovering and developing the active ingredient in the first place. Indeed, "tablets can be produced and distributed for pennies, while development of new drugs costs hundreds of millions of dollars."[1]    Published opinions similarly recognize the low incremental costs of producing pharmaceuticals, including a Third Circuit case stating that Abbott's costs in making the Abbott drug, ethylsuccinate, is *four pennies* per tablet. *Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 105 (3d Cir. 1992). Especially in this context, Meijer has failed to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that Abbott's incremental cost of producing lopinavir exceeds *$1.64* (*i.e.*, the absolute minimum implicit price of lopinavir under any possible calculation). *See Twombly*, 127 S. Ct. at 1965.

If there is any doubt on the point, Abbott respectfully suggests that the Court dismiss the Meijer complaint with leave to replead Counts 1 and 2 to allow it to attempt to allege actual facts that meet the *Twombly* plausibility standard. But, the reality is that – as many others have already recognized – Abbott is nowhere close to below-cost pricing for lopinavir under any possible calculation.

Count 3, alleging Boost*ing* Market monopolization, fares no better. According to Meijer's opposition brief, Abbott's purported "anticompetitive conduct" was charging "reasonable prices" for Norvir before December 3, 2003. (Opp'n at 19). Those "reasonable prices," coupled with Abbott's decision to grant competitors patent licenses, allegedly "lulled" competitors into *not* developing Norvir-alternatives. (Opp'n at 19 & n. 7). But "the antitrust laws do not condemn even a

---

[1] Richard G. Frank, *Government Commitment And Regulation Of Prescription Drugs*, Health Affairs 22:3, 46-48 (2003) ("Prescription Drugs"), http://content.healthaffairs.org/cgi/content/full/22/3/46 (citing DiMasi et al., *The Cost of New Drugs*, Journal of Health Economics 22:2, 151-186 (2003) and R.G. Frank, *The Cost of New Drugs* (editorial), Journal of Health Economics 22:2, 325–330 (2003)).

2

1    monopolist for offering its product at an attractive price." *United States v. Microsoft Corp.*, 253

2    F.3d 34, 68 (D.C. Cir. 2001). And patent licensing – one of the "essential rights of a patentee" – is

3    also not exclusionary conduct under the antitrust laws. *United States v. Studiengesellschaft Kohle,*

4    *m.b.H.*, 670 F.2d 1122, 1127 (D.C. Cir. 1981).

5          Meijer cites nothing to the contrary and, instead, relies primarily on *Aspen Skiing Co. v.*

6    *Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985). It argues that *Aspen Skiing* holds that a change

7    in historically profitable conduct – such as the allegation that Abbott "changed course" by increasing

8    the already "reasonable price" of Norvir – is sufficient to demonstrate exclusionary conduct under

9    the Sherman Act. But that is not remotely what *Aspen Skiing* stands for, as the Supreme Court

10   specifically held in *Verizon Communications., Inc., v. Law Offices of Curtis V. Trinko, LLP*, 540

11   U.S. 398, 409 (2004). *Aspen Skiing* is a narrow refusal-to-deal case that has no possible relevance to

12   Meijer's "reasonable price" theory of exclusionary conduct.

13         Because none of Meijer's claims plausibly entitles it to any relief, the complaint should be

14   dismissed in its entirety.

15   **II.    ARGUMENT**

16         **A.    Meijer's  Summary Allegations Of Below-Cost Pricing Do Not State A Claim**

17                **Under *Cascade***

18         As discussed in Abbott's omnibus motion to dismiss, Meijer's theory of liability for

19   monopolization of the Boosted Market is controlled by *Cascade*, which requires a showing of

20   below-cost pricing. In the most conclusory language with nothing in support, Meijer alleges below-

21   cost pricing in paragraph 41 of its complaint. That bald allegation is insufficient to survive a motion

22   to dismiss.

23                **1.    The Supreme Court Requires Meijer To Show A "Plausible Entitlement**

24                      **To Relief" At The Pleadings Stage**

25         In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court held that a

26   plaintiff must allege facts sufficient to demonstrate a "plausible entitlement to relief." *Id.* at 1967.

27   Particularly given the extraordinary costs required to litigate an antitrust case, the Court explained

28   that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

3

1    labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

2    *Id.* at 1964-65 (alteration omitted).  As Meijer readily admits, this standard thus requires a plaintiff

3    to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the

4    alleged antitrust violation]."  (Opp'n at 10 (quoting *Twombly*, 127 S. Ct. at 1965)).

5        Meijer nonetheless argues that *Twombly* did not alter the basic rules governing Rule 12(b)(6)

6    motions in antitrust cases.  For this proposition, it quotes the Ninth Circuit's decision in *Silvas v.*

7    *E*Trade Mortgage Corp.*, No. 06-55556, 2008 WL 239422 (9th Cir. Jan. 30, 2008).   However,

8    *Silvas* was not an antitrust case, did not turn on the sufficiency of the factual allegations in the

9    complaint, and does not so much as cite *Twombly*, let alone purport to limit it.  Rather, in the section

10   on the standard of review, *Silvas* merely recites the pre-*Twombly* "no set of facts" pleading standard

11   that the *Twombly* Court went to great lengths to "retire."  *Id.* at *2.  As the Supreme Court explained:

12   "We could go on, but there is no need to pile up further citations to show that *Conley's* 'no set of

13   facts' language has been questioned, criticized, and explained away long enough. . . .   [A]fter

14   puzzling the profession for 50 years, this famous observation has earned its retirement."  *Twombly*,

15   127 S. Ct. at 1969.

16       Meijer also relies on *Erickson v. Pardus*, 127 S. Ct. 2197 (2007), a case decided during the

17   same term as *Twombly*, to suggest that the very Court that issued *Twombly* regarding the pleading

18   standard in antitrust cases immediately recanted it.  *Erickson*, however, involved a *pro se* prisoner

19   plaintiff in a civil rights suit, not an antitrust case.  *Erickson* in no way recanted *Twombly*, and

20   indeed, turned on the less-stringent pleading standards afforded *pro se* litigants.  *Erickson*, 127 S. Ct.

21   at 2200.

22       *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773 (7th Cir. 2007), another decision

23   upon which Meijer relies, further confirms the import of *Twombly* on pleading requirements.

24   *Concentra* explained that *Twombly* interpreted Federal Rule of Civil Procedure 8(a) to impose two

25   separate requirements:   (1) that the plaintiff describe the claim in sufficient detail to give the

26   defendant fair notice of what the claim is and the grounds upon which it rests, *and* (2) that the

27   allegations "plausibly suggest that the plaintiff has a right to relief, raising the possibility above a

28   'speculative level.'"  *Id.* at 776 (citing *Twombly*, 127 S. Ct. at 1965, 1973 n.14).

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

4

Meijer also attempts to excuse its failure to comply with the *Twombly* standard by asserting that the facts in question are purportedly "within the exclusive position and control of Abbott." (Opp'n at 14). But the dissenters in *Twombly* made precisely the same argument – that is, that the pleading standards should be relaxed when the facts in question are exclusively within the defendants' control. *Twombly*, 127 S. Ct. at 1983 (Stevens, J., dissenting). The *Twombly* Court, however, rejected that argument and affirmed dismissal under Rule 12(b)(6) because the Plaintiffs failed to allege specific facts to show that the allegation of an antitrust conspiracy was "plausible" and to show a "reasonable expectation that discovery" would confirm that allegation. *Id*. at 1965.

Regardless of whether the Supreme Court considers *Twombly* as imposing a heightened pleading standard or simply reaffirming an existing one, its holding is clear: the complaint must contain sufficient factual allegations to make the plaintiff's claim not just possible but also plausible. *Id*. Even before *Twombly*, courts dismissed antitrust claims, including alleged below-cost pricing, for failing to allege anything beyond a formulaic parroting of the claim elements. As *Twombly* explains, "[w]ithout some factual allegations in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. at 1965 n.3; *see also Tri-State Rubbish v. Waste Mgmt.*, 998 F.2d 1073, 1080 (1st Cir. 1993) ("[A] complaint that did no more than allege predatory pricing or exclusive dealing contracts with *nothing* more specific might well be susceptible to dismissal for failure to state a claim."); *Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*, CV 07-00043 MMM, 2007 U.S. Dist. LEXIS 89946, *17, *67 (C.D. Cal. Oct. 29, 2007) (citing *Cascade* and dismissing antitrust claim with prejudice where "complaint does not allege sufficient factual detail to state a claim"); *United Magazine Co. v. Murdoch Magazines Distrib.*, 146 F. Supp. 2d 385, 401 (S.D.N.Y. 2001) ("[W]here the facts alleged in a complaint demonstrate that an alleged predatory pricing conspiracy makes no economic sense, the cause of action must be dismissed."); *Taggart v. Rutledge*, 657 F. Supp. 1420, 1437 (D. Mont. 1987) ("Plaintiffs have not even mentioned Rutledge's costs, must less determined his average variable costs or marginal costs. . . . These allegations clearly are insufficient to support a claim of predatory pricing.").

Meijer also argues that, if discovery shows their complaint to be unwarranted, it can be

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

5

1    dismissed at a later stage in the litigation.  But, the Supreme Court rejected that same argument in

2    *Twombly*: "[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if

3    groundless, be weeded out early in the discovery process through 'careful case management,' given

4    the common lament that the success of judicial supervision in checking discovery abuse has been on

5    the modest side." *Id*. at 1967 (citation omitted).

6               **2.       Meijer Has Not Plausibly Alleged That Abbott's Incremental Cost Of**

7                          **Producing The Lopinavir Component Of Kaletra Exceeds $1.64.**

8               Meijer has failed to meet the *Twombly* standard because, admittedly, it has failed to allege

9    anything in support of its bare below-cost allegation.  Under *Twombly*, that allegation is nowhere

10   enough to embark on an enormously expensive antitrust case.

11              On its face, Meijer's conclusory below-cost pricing allegation is wholly implausible.  Using

12   pricing information Meijer concedes is incorporated in its consolidated amended complaint (Opp'n

13   at 12), Abbott demonstrated in its opening brief that the imputed, or "effective," price for the

14   lopinavir portion of Kaletra in 2003 was $1.64 at the very minimum under any possible calculation.

15   (*See* Mot. at 6).  Meijer neither pleads facts that would support a lower imputed price, nor facts that

16   would make "plausible" the idea that the incremental cost of producing lopinavir is above at least

17   $1.64, nor "enough fact[s] to raise a reasonable expectation" that discovery will show that the

18   incremental cost is above $1.64.  *Twombly*, 127 S. Ct. at 1965.  The Meijer complaint offers literally

19   nothing whatsoever beyond a conclusory allegation of below-cost pricing.  That ends the analysis

20   under *Twombly*.

21              Meijer's attempt to add facts in their opposition changes nothing.  This is true for the

22   threshold reason that absent judicial notice, "[b]ecause Rule 12(b)(6) review is confined to the

23   complaint, the court may not consider material outside the pleading (e.g., facts presented in briefs,

24   affidavits, or discovery materials)." *Warren v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057,

25   1062 (C.D. Cal. 2001).

26              It is also true because Meijer's efforts in its opposition only confirm the implausibility of its

27   below-cost pricing suggestion.  Meijer ignores that *Cascade's* focus is the "*incremental*" cost of

28   producing an extra unit, meaning that costs that do not increase when producing that extra unit (that

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

6

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

is, fixed costs) are not included in the calculation. *Cascade*, 2008 WL 269506, at *18. *Cascade* specifically holds that the relevant "incremental" costs should be measured by "average variable costs." *Id.* In support, the Ninth Circuit cited the Fifth Circuit's decision in *Stearns Airport Equipment Co. v. FMC Corp.*, 170 F.3d 518, 532 (5th Cir. 1999), which explains the distinction between variable and fixed costs:

> In this analysis, we attempt to distinguish between costs that are fixed – at least over the short term – and costs that vary with the amount produced. Thus salaried labor costs, rent or depreciation on real estate, and certain capital expenses are considered fixed. But inputs like hourly labor, the cost of materials, transport, and electrical consumption at a plant will vary, and are relevant to a predation inquiry.

*Id.* (citation omitted).

It is widely recognized that the pharmaceutical industry has "low marginal cost and high fixed cost." *See* Prescription Drugs, *supra* note 1. Indeed, "[m]any of the costs of a new drug are incurred before manufacturing for sale begins – costs of research, of development, of obtaining patents, of obtaining FDA approval, and so forth." *In re Brand Name Prescription Drugs Antitrust Litig.*, 288 F.3d 1028, 1030 (7th Cir. 2002). Thus, when eliminating pharmaceutical costs that do not vary "over the short term" with the "amount produced" – huge fixed costs including the cost of manufacturing facilities and the salaried work force supporting the franchise – the "average variable costs" of producing a pharmaceutical tablet are negligible. *Stearns*, 170 F.3d at 532. This reality led the Seventh Circuit to state – based on common knowledge alone – that "[e]ven if the ritonavir component of Kaletra were deemed to cost the same (per milligram) as ritonavir sold as Norvir, the imputed price of Kaletra's lopinavir component would be above the average variable cost of its manufacture." *Schor v. Abbott Labs.*, 457 F.3d 608, 611 (7th Cir. 2006); *see also, e.g., Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 105 (3d Cir. 1992) (stating in an antitrust case that "Abbott's cost is $4.20 per 100 tablets" of ethylsuccinate 400 mg – a cost just over *four cents* per tablet).

Even in its opposition, Meijer presents no facts calling into question the general structure of the pharmaceutical industry in this particular situation. Meijer's *sole* defense of its conclusory

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1    below-cost pricing allegation is its focus on Abbott's supposed 70% "margins" for the bundled

2    product Kaletra.  (Opp'n at 16-17).  It argues that "Abbott's own documents" – which are not

3    incorporated into the complaint – "appear to show that Kaletra's *margins (as a percentage of sales)*

4    hovered around 70% during the relevant time period." (*Id.* at 17 (emphasis added)).  According to

5    Meijer, a 70% margin "means that . . . Abbott's average variable costs for *Kaletra* exceeded $5."

6    (*Id.* (emphasis added)).

7            That is flatly incorrect.  Meijer incorrectly focuses on "margins" to calculate Abbott's

8    variable costs – a calculation that compares apples to oranges.  The term "margins" refers to net

9    revenue a company makes after subtracting that company's total *variable* and *fixed* costs from sales

10   revenues.  *See, e.g.*, *Nintendo of Am. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1035 (9th Cir. 1994);

11   *In re Nokia Corp. Sec. Litig.*, No. 96 Civ. 3752 (DC), 1998 WL 15096, *9-10 (S.D.N.Y. Apr. 1,

12   1998).  "The total of the costs and the profit margin is the price." *Tenneco, Inc. v. United States*, 17

13   Cl. Ct. 345, 347 (Ct. Cl. 1989).  As the Ninth Circuit in *Cascade* made clear, however, the proper

14   focus of the below-cost inquiry is not on total costs, but only on "*variable* costs" – the "costs that

15   change with the amount of output." *Cascade*, 2008 WL 269506, at *18 (emphasis added).

16           In short, "margins" and total costs are not the relevant inquiry (nor is the entire bundled

17   product, Kaletra, rather than just the lopinavir portion of the bundle).  Meijer's focus on purported

18   Kaletra margins only confirms that Meijer has no basis on which to amend its complaint to allege

19   specific facts sufficient to meet the *Twombly* standard for a below-cost allegation.  Because Meijer's

20   complaint does not allege any facts that would make a suggestion of below-cost pricing plausible, it

21   must be dismissed.

22   **B.    Meijer's Unprecedented Allegations That Abbott Monopolized The Boosting**

23   **Market Also Fail To State A Claim**

24           Even though many parties have litigated the Norvir price increase for four years, Meijer

25   crafts a brand new theory of antitrust liability focused not on the Boosted Market, but on the

26   Boos*ting* Market.  In its opening brief, Abbott made the rather obvious point that Abbott has a patent

27   on the only drug in the Boosting Market, *i.e.*, Norvir.  Accordingly, as the Court is well aware,

28   Abbott "can, of course, charge such price as [it] may choose" for that drug.  *Monsanto Co. v.*

8

1   *McFarling*, 302 F.3d 1291, 1299 (Fed. Cir. 2002) (citation omitted).

2       In response, Meijer argues that Abbott unlawfully maintained its patent monopoly over the

3   Boosting Market by "lulling" competitors into opting against developing Norvir alternatives through

4   (a) "reasonable price[s]" before the December 2003 Norvir price increase and (b) license agreements

5   to the patents over Norvir.  (Opp'n at 19).  Specifically, Meijer asserts that Abbott misled

6   competitors "through Abbott's well-established course of selling Norvir *at a reasonable price*, and

7   licensing for co-promotion to manufacturers of boosted protease inhibitors, and then reversing

8   course with its massive price increase."  (*Id.* at 19 (emphasis added)).  The effect of Abbott's

9   "reasonable price" for Norvir, according to Meijer, was to stifle competition by fooling competitors

10  into delaying development of rival boosting drugs and/or PIs that required a smaller dosage of

11  Norvir.  (*See id.* at 20-21).

12      Even if Meijer had alleged a plausible basis under *Twombly* for *any* delayed development by

13  *any* competitor – which it does not – these allegations as a matter of law do not state a claim for

14  exclusionary conduct.  "The rare case of price predation aside, the antitrust laws do not condemn

15  even a monopolist for offering its product at an attractive price."  *United States v. Microsoft Corp.*,

16  253 F.3d 34, 68 (D.C. Cir. 2001).  In fact, the Ninth Circuit in *United States v. Syufy Enterprises*,

17  903 F.2d 659 (9th Cir. 1990), flatly rejected the notion that unlawful monopolization occurs when a

18  defendant "offer[s] a better product at a lower price."  *Id.* at 663.  The Court explained:  "When a

19  producer deters competitors by supplying a better product at a lower price, when he eschews

20  monopoly profits . . ., *the goals of competition are served*, even if no actual competitors see fit to

21  enter the market at a particular time."  *Id.* at 668 (emphasis added).  The Court added:  "If a

22  dominant supplier acts consistent with a competitive market – out of fear perhaps that potential

23  competitors are ready and able to step in – *the purpose of the antitrust laws is amply served*."  *Id.* at

24  668-69 (emphasis added); *see also Olympia Equip. Leasing Co. v. Western Union Tel. Co.*, 797 F.2d

25  370, 373 (7th Cir. 1986) ("[A]s the emphasis of antitrust policy shifted from the protection of

26  competition as a process of rivalry to the protection of competition as a means of promoting

27  economic efficiency, it became recognized that the lawful monopolist should be free to compete like

28  everyone else;  otherwise the antitrust laws would be holding an umbrella over inefficient

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

9

1   competitors.").

2       None of the other alleged conduct at issue – that of licensing Norvir for co-promotion, of

3   "secretly plotting to change its established course of dealing," and of failing to disclose plans for

4   increasing prices – constitutes exclusionary conduct.  First, a patent holder's grant of a license for a

5   patent does not violate the antitrust laws.  To the contrary, licensing increases competition; it does

6   not decrease competition.  Further, one of the "essential rights of a patentee" is the right "to license

7   others."  *United States v. Studiengesellschaft Kohle, m.b.H.*, 670 F.2d 1122, 1127 (D.C. Cir. 1981).

8   "The right to license [a] patent, exclusively or otherwise, or to refuse to license at all, is 'the

9   untrammeled right' of the patentee."  *United States v. Westinghouse Elec. Corp.*, 648 F.2d 642, 647

10  (9th Cir. 1981) (citation omitted).

11      Second, the allegations that Abbott was "secretly plotting" to change the price of Norvir and

12  considered taking Norvir off of the market are irrelevant.  Even if such allegations supported an

13  *intent* element of monopolization, it is clear that exclusionary *conduct* is also necessary to state a

14  claim under section 2 of the Sherman Act.  As the Supreme Court put it:  "To safeguard the incentive

15  to innovate, the possession of monopoly power will not be found unlawful unless it is accompanied

16  by an element of anticompetitive *conduct*."  *Verizon Comms. Inc. v. Law Offices of Curtis V. Trinko*,

17  *LLP*, 540 U.S. 398, 407 (2004) (emphasis in original).  Again, Meijer does not and cannot allege that

18  the December 2003 Norvir price increase monopolized the Boosting Market.  And Meijer does not

19  and cannot allege that Abbott actually removed Norvir from the market (which would not, in any

20  event, be an act of monopolization in that market).   Accordingly, the amended complaint's

21  allegations concerning Abbott's internal consideration of its Norvir pricing and distribution strategy

22  are irrelevant.

23      Third, and relatedly, there is no duty under the antitrust laws to pre-disclose confidential and

24  propriety pricing plans to competitors.  *Cf. Berkey Photo v. Eastman Kodak Co.*, 603 F.2d 263, 281

25  (2d Cir. 1979) ("We hold that . . . , as a matter of law, Kodak did not have a duty to predisclose

26  information about [a new product] to competing camera manufacturers.");  *GAF Corp. v. Eastman*

27  *Kodak Co.*, 519 F. Supp. 1203, 1228 (S.D.N.Y. 1981).  On the contrary, as the Ninth Circuit has

28  held, advanced announcements of pricing changes to competitors may be evidence of price fixing.

*Winston & Strawn LLP*
*101 California Street*
*San Francisco, CA 94111-5894*

10

1    *In re Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 445-50 (9th Cir. 1990).

2        Finally, Meijer is wrong to rely on *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472

3    U.S. 585 (1985), and *Image Technical Services., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir.

4    1997).  While Meijer says that these cases proscribe the "exact type of conduct" at issue (Opp'n at

5    19), they are in fact, refusal-to-deal cases that did not concern pricing decisions of any sort.  This

6    Court already has found *Aspen Skiing* "inapposite" to the Norvir cases for this very reason:  "*Aspen*

7    *Skiing Co.*, involving a defendant's refusal to cooperate with its smaller rival, is inapposite.  This is

8    not a failure to deal, or failure to cooperate, case." *In re Abbott Labs. Norvir Antitrust Litig.*, 442 F.

9    Supp. 2d 800, 807 (N.D. Cal. 2006).

10        At pages 11-13 of Abbott's reply brief in support of its Omnibus Motion To Dismiss based

11   on *Cascade*, Abbott fully explains *Aspen Skiing*'s narrow holding, which is inapplicable to Meijer's

12   theory.  (Abbott's Omnibus Reply, at 11-13).  To briefly recap, the Supreme Court in *Verizon* held

13   that *Aspen Skiing* is a limited exception to the general "no duty to deal" rule "at or near the outer

14   boundary of § 2 liability," which turned on two critical aspects of the defendant's conduct:  (1) the

15   defendant "turned down a proposal to sell at its own retail price, suggesting a calculation that its

16   future monopoly retail price would be higher;" and (2) the defendant voluntarily terminated a course

17   of dealing that, under the circumstances, suggested it was forsaking short-term profits to achieve an

18   anticompetitive end. *Verizon Comms., Inc.*, 540 U.S. at 409.  The Ninth Circuit similarly recognizes

19   these two factors as critical to invoking the narrow *Aspen Skiing* exception to the "no duty to deal"

20   rule. *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1131-32 (9th Cir. 2004).

21        Here, Meijer does not attempt to allege either factor.  There is no alleged refusal to deal, no

22   refusal to deal with competitors on terms available to others, and no alleged forsaking of short-term

23   profits for long-term gain.  On the contrary, Meijer is complaining that Abbott was *freely* dealing by

24   selling at "reasonable prices" while licensing followed by an effort to *increase* profits through a

25   price increase on a patented product.  Thus, *Aspen Skiing* is inapplicable.   Because Meijer fails to

26   allege any exclusionary conduct under the law, its complaint should be dismissed under Rule

27   12(b)(6).

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

III.     **CONCLUSION**

For the reasons set forth above, and in Abbott's memorandum in support of its motion to dismiss, this Court should dismiss all three counts in the Meijer Plaintiffs' Consolidated Amended Complaint with prejudice.

Dated: February 21, 2008                    WINSTON & STRAWN LLP


By:     /s/ James F. Hurst
        James F. Hurst
        Attorneys for Defendant
        ABBOTT LABORATORIES

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894