# EXHIBIT 3

1 | Thomas C. Mavrakakis (SBN 177927)
    Michael A. Sweet (SBN 184345)
2 | George C. Lombardi (*Admitted Pro Hac Vice*)
    James F. Hurst (*Admitted Pro Hac Vice*)
3 | David J. Doyle (*Admitted Pro Hac Vice*)
    Samuel S. Park (*Admitted Pro Hac Vice*)
4 | WINSTON & STRAWN LLP
    101 California Street, Suite 3900
5 | San Francisco, CA 94111-5894
    Telephone:   415-591-1000
6 | Facsimile:   415-591-1400
    Email: tmavrakakis@winston.com,
7 | msweet@winston.com; glombardi@winston.com;
    jhurst@winston.com; ddoyle@winston.com;
8 | spark@winston.com

9 | Attorneys for Defendant
    ABBOTT LABORATORIES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| IN RE ABBOTT LABS NORVIR ANTITRUST LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) | Case No. C-04-1511 CW<br><br>**REPLY BRIEF IN SUPPORT OF ABBOTT LABORATORIES' RENEWED MOTION FOR SUMMARY JUDGMENT**<br><br>DATE:  April 7, 2006<br>TIME:  10:00 a.m.<br>DEPT:  2<br><br>The Honorable Judge Wilken |
|---|---|---|

**REPLY BRIEF IN SUPPORT OF ABBOTT LABORATORIES' RENEWED MOTION FOR SUMMARY JUDGMENT**

Finally, Plaintiffs fail to raise any genuine dispute about Abbott's legitimate business justification for increasing Norvir's price, which by itself defeats their *Kodak* claim. All of Abbott's decision-makers testified that they increased Norvir's price not to attempt to monopolize the Boosted Market, but to obtain fair value for Norvir's boosting ability. That decision resulted in an increase from the lowest-priced HIV drug in history at $1.71 a day to $8.57 a day for the typical patient in a market populated with $20 and $30 drugs. After extensive discovery into Abbott's intent, Plaintiffs have failed to cite any contrary evidence about Abbott's legitimate business justification for raising Norvir's price.

## II.  ARGUMENT

### A.  Market Realities Defeat Plaintiffs' Monopoly Leveraging Claim.

Plaintiffs' efforts to avoid the market realities fail because their new market definitions: (1) fail to state a claim for monopoly leveraging; and (2) make no sense, particularly because they completely contradict their liability theory.

#### 1.  Under Their New Market Definitions, Plaintiffs No Longer Allege Two "Separate" Markets And, Thus, They Have No Monopoly Leveraging Claim.

In their zeal to avoid Abbott's plummeting market share from 77% to 47%, Plaintiffs have changed their market definitions in a way that completely eliminates their cause of action. Two years ago when they filed suit, Plaintiffs defined the "Booster Market" and "Boosted Market" as "separate relevant product markets" (Doe ¶ 38; SEIU ¶ 40) – one "market for Norvir" and a second "market for PIs only when prescribed together with Norvir as a booster." (Doe ¶ 14; SEIU ¶ 15; *accord* 9/12/05 Order at 2:8-12 (Court using same definition)). Norvir obviously is *not* part of the Boosted Market under Plaintiffs' definition because doctors do not prescribe Norvir "together with Norvir as a booster."

Now, in an effort to inflate Abbott's market share, Plaintiffs argue that Norvir *is* part of the Boosted Market. This increases Abbott's market share by *13%* to their current claim of *88.3%* in July 2003, compared to their original claim that "in June of 2003, Abbott had a *75%* share of the ... Boosted Market." (Wiebe Sec. Decl., Ex. A at 23:5-6; Doe ¶ 17; SEIU ¶ 18). The Court should preclude Plaintiffs from changing their market definitions at this late date, nearly two years after

they filed their complaint, in response to a summary judgment motion. *See Western Parcel Express v. UPS*, 65 F. Supp. 2d 1052 (N.D. Cal. 1998) (noting that an effort "to redefine and narrow" a "relevant market may be procedurally improper" at the summary judgment stage).

Moreover, by changing their market definitions, Plaintiffs no longer are pursuing the monopoly-leveraging theory approved by the Ninth Circuit in *Kodak*. In that case, Kodak used its patent monopoly on copier parts to "create a *second* monopoly" over the unpatented market for servicing copy machines, which the Court noted "had been proven to be *separate markets*." *Image Technical Services v. Eastman Kodak*, 125 F.3d 1195, 1202, 1217 (9th Cir. 1997) (emphasis added). Without a *patented* market that is "*separate*" from an *unpatented* market, there can be no monopoly leveraging under *Kodak*. Indeed, regardless of the context of the claim, the fundamental premise of "monopoly leveraging" is that there are two markets, where the defendant improperly leverages its monopoly in one market to attempt to monopolize "a *defined second market, distinct from the first (monopoly) market*." *Catlin v. Washington Energy Co.*, 791 F.2d 1343, 1348-49 (9th Cir. 1986) (emphasis added); *accord Cost Mgmt. Servs. v. Washington Natural Gas Co.*, 99 F.3d 937, 951 (9th Cir. 1996) (monopoly leveraging requires a "two-market situation" where a defendant "attempt[s] to use monopoly power in one market to monopolize another market").

Here, Plaintiffs no longer are alleging the existence of a second "separate" and "distinct" unpatented market. Instead, they say that competitive PIs are "not substitutes" for Kaletra "without the inclusion of Norvir." (Pls' Opp. at 2). They thus contend that "Abbott has two products in the Boosted Market, Kaletra and Norvir." (*Id.* at 10). Because they now have morphed their original two markets into a single market for a combination regimen (PI plus booster), there no longer is a "second" and "distinct" Booster Market for Norvir alone. Obviously, the exact same Norvir prescriptions to the exact same patients cannot be counted twice to magically create two markets. Without two "distinct" markets, Plaintiffs have no claim for monopoly leveraging.

**2. Even If *Kodak* Somehow Could Apply To A Single Market Case, Abbott's Falling Market Share Refutes Plaintiffs' Monopolization Claims.**

The reason Plaintiffs have abandoned their original two-market theory is clear: They have no response to the reality that Abbott's rapidly falling market share refutes three separate

elements of their antitrust claim: (a) monopoly power, (b) anticompetitive conduct, and (c) antitrust injury.

### a. Plaintiffs Have Not Established And Cannot Establish That Abbott Has "Monopoly Power" In The Boosted Market.

To prevail on their claim, Plaintiffs must show that Abbott either has "monopoly" power in the Boosted Market (monopolization) or at least a dangerous probability of obtaining such power (attempted monopolization). Plaintiffs contend that they have made that showing through both direct and circumstantial evidence. They have done neither.

#### i. Plaintiffs Have Offered No Direct Evidence Of Monopoly Power.

Plaintiffs clearly have not provided "direct evidence" of monopoly power, which "is only rarely available" and is considered "difficult" and, indeed, virtually "impossible" to provide. *Heerwaken v. Clear Channel Communications*, 435 F.3d 219, 227 (2nd. Cir. 2006); *Harrison Aire, Inc. v. Aerostar Intern., Inc.*, 423 F.3d 374, 380 (3d Cir. 2005). Direct evidence requires proof that the defendant restricted output to produce "supracompetitive prices." *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). Establishing that the resulting prices were "supracompetitive" requires evidence of the defendant's "costs" to show an "abnormally high price-cost margin." *Geneva Pharm. Technology Corp. v. Barr Labs.*, 386 F.3d 485, 500 (2d Cir. 2004). And even after that showing, a plaintiff still fails to provide "direct evidence of monopoly power" without an "accompanying showing of restricted output." *Forsyth v. Humana*, 114 F.3d 1467, 1476 (9th Cir. 1997).

Here, Plaintiffs have made no effort to show *either* "supracompetitive prices" *or* "restricted output." Far from asserting that Abbott is charging "supracompetitive prices" in the Boosted Market, Plaintiffs contend just the opposite – that Kaletra's price is too low compared to the cost of competitive PIs coupled with Norvir. (Pls' Opp. at 1). And they have not offered one stitch of evidence relating to restricted output in the Boosted Market. Nor does any such evidence exist.

Plaintiffs cannot overcome their utter lack of evidence by citing *Confederated Tribes of Siletz Indians of Or. v. Weyerhaeuser Co.*, 411 F.3d 1030, 1034 (9th Cir. 2005), where the Court found that the plaintiff *did* present "direct evidence of the injurious exercise" of market power by

Kaletra's falling market share. (*Id.*). That subsequent analysis turned out to be exactly right because, in fact, Norvir's price increase had no such impact. (Wiebe First Decl., Ex. R).

### III. CONCLUSION

For the foregoing reasons, Abbott respectfully requests that the Court grant its renewed motion for summary judgment.

Dated: March 21, 2006                              WINSTON & STRAWN LLP


                                        By:    /s/ James F. Hurst
                                               James F. Hurst (Admitted *Pro Hac Vice*)
                                               One of Attorneys for Defendant
                                               ABBOTT LABORATORIES