# TAB H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 99-MDL-1317-SEITZ/KLEIN

IN RE TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION
_____/

**This Document Relates to:**

*Louisiana Wholesale Drug Co., Inc.*                    *Case No. (S.D. Fla.) 98-3125*
*v. Abbott Laboratories, et al.*

*Valley Drug Company v. Abbott*                         *Case No. (S.D. Fla.) 99-7143*
*Laboratories, et al.*
_____/

## OMNIBUS ORDER (1) GRANTING MOTION FOR CERTIFICATION OF THE PROPOSED DIRECT PURCHASER ("SHERMAN ACT") CLASS; (2) GRANTING MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT; (3) GRANTING MOTION FOR APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS; AND (4) GRANTING MOTION FOR SETTING CERTAIN DEADLINES

THIS MATTER is before the Court upon the Sherman Act Class Plaintiffs' Motion for (A) Certification of the Proposed Direct Purchaser ("Sherman Act") Class In Light of Settlement and Re-Appointment of Class Counsel; (B) Preliminary Approval of the Proposed Settlement With Defendants Abbott Laboratories and Geneva Pharmaceuticals, Inc. (now known as Sandoz, Inc.); (C) Approval of the Form and Manner of Notice to the Class; and (D) Setting of Certain Deadlines, filed on February 24, 2005. The Court heard argument from counsel at the preliminary approval hearing on February 24, 2005. Upon review of the Sherman Act Class Plaintiffs' Motion and supporting memorandum of law, the authorities cited therein, the parties' Settlement Agreement, and the proposed Notice, it is hereby

ORDERED AND ADJUDGED as follows:

1.    In light of the changed circumstances brought on by the proposed settlement (the "Settlement") between the Sherman Act Class Plaintiffs and members of the proposed class (the "Sherman Act Class" or the "Class") and defendants Abbott Laboratories ("Abbott") and Geneva Pharmaceuticals, Inc.

("Geneva"), the Court finds it appropriate to certify a class of Direct Purchasers for purposes of settlement.

The Sherman Act Class Plaintiffs' Motion for Certification of the Proposed Direct Purchaser Class In Light

of Settlement and Re-Appointment of Class Counsel is, therefore, GRANTED. The Court will set forth its

reasoning regarding class certification in light of the fact of settlement in a separate opinion. The certified

class is defined as follows:

> All persons who purchased Hytrin, also known by the chemical name terazosin
> hydrochloride, directly from Abbott Laboratories, at any time during the period commencing
> March 31, 1998, through and including, June 30, 2001. *Excluded from the Class are:* (1)
> Defendants Abbott Laboratories, Geneva Pharmaceuticals, Inc. (now known as Sandoz,
> Inc.), Zenith Goldline Pharmaceuticals, Inc. (now known as Ivax Pharmaceuticals, Inc.),
> their officers, directors, management, employees, subsidiaries, and affiliates; (2) each of the
> following entities, and any and all claims of each said entity that have been asserted or could
> have been asserted, in *In re Terazosin Hydrochloride*, Case No. 99 MDL 1317, arising out
> of Hytrin or generic terazosin hydrochloride purchases by said entity: CVS Meridian, Inc.,
> Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., the Stop
> & Shop Supermarket Co., and Hy-Vee, Inc.; and (3) Kaiser Foundation Health Plan, Inc. and
> the Kaiser entities on whose behalf it has asserted claims in paragraph 8 of its complaint in
> 99 MDL 1317.

2.      The Court also appoints as class counsel pursuant to Rule 23(g) of the Federal Rules of Civil

Procedure those firms named in ¶ 2 of this Court's August 25, 2000, Second Amended Case Management

Order, namely Garwin Gerstein & Fisher, LLP; Boies Schiller & Flexner LLP; Berger & Montague, P.C.;

and The Calvin Law Firm, P.C.

3.      Based on its preliminary review of the proposed Settlement Agreement, the Court finds that

the proposed Settlement appears to have been the result of arm's length negotiation by highly experienced

counsel, with the assistance and support of a highly competent mediator. The Court also finds that the

proposed Settlement falls within the reasonable range of approvable settlements. Therefore, the Motion for

Preliminary Approval of the Proposed Settlement With Defendants Abbott Laboratories and Geneva

Pharmaceuticals, Inc. (now known as Sandoz, Inc.) is GRANTED, and the proposed settlement is

PRELIMINARILY APPROVED.

4.    The Court finds that the attached Notice of Proposed Class Action Settlement and Hearing Regarding Settlement,[1] which is to be mailed by first class United States mail to all Class members who can be reasonably identified and located, is the best notice practicable under the circumstances under Rule 23(c)(2)(B); otherwise satisfies Rule 23(c)(2), the requirements of Rule 23(e), and constitutional due process; and is otherwise fair and reasonable. Thus, the Sherman Act Class Plaintiffs' Motion for Approval of the Form and Manner of Notice to the Class is GRANTED, and the attached Notice of Proposed Class Action Settlement and Hearing Regarding Settlement is APPROVED for dissemination to the Class. On or before **March 1, 2005,** the Sherman Act Class Plaintiffs shall disseminate the Notice to the Class via first class mail to all Class members. Dissemination shall be considered complete upon mailing.

5.    The Court approves the continued use of Heffler Radetich & Saitta, L.L.P., 1515 Market Street, Suite 1700, Philadelphia, PA 19102, as the Claims Administrator. Responsibilities of the Claims Administrator shall include: disseminating the Notice (as described in paragraph 4 above) to the Class; accepting and maintaining documents sent from Class members, including opt-out forms, claim forms, and other documents relating to claims administration; and administering claims for allocating damages to Class members.

6.    As described in the Notice to the Class, any proposed Class member who wishes to opt out of the Class may do so by making a written request and causing same to be *received* by the Claims Administrator on or before **March 31, 2005.** Requests for exclusion from the Class must include the sender's name and address and clearly state that the sender wishes to opt out or be excluded from the Class. Persons or entities that request exclusion from the Class will not be entitled to share in the benefits of the settlement, and will not be bound by any judgment, whether favorable or adverse.

---

[1]  The original form of Notice to the Class was submitted as Exhibit 2 to the Settlement Agreement, which is attached as Exhibit A to Plaintiffs' Preliminary Approval Motion. The approved notice, attached to this Order, incorporates the Court's and the parties' revisions based on the discussions at the February 24, 2005, preliminary approval hearing.

7.     On or before **April 5, 2005**, counsel for the Sherman Act Class Plaintiffs shall file: (a) their application for attorneys' fees and costs, specifying the total amount of costs and expenses to be reimbursed, and the total amount of attorneys' fees sought from the settlement fund; (b) their request for incentive awards for the representative plaintiffs; (c) their plan of allocation; and (d) their motion for final approval of the Settlement Agreement and brief in support.

8.     Class members who have not availed themselves of the opportunity to opt out of the Class, but who wish to object to the proposed settlement and/or be heard at the Fairness Hearing (*see* below), shall file with the Clerk of this Court by no later than **April 8, 2005** (and cause to be received by Class Counsel no later than **April 8, 2005**) a Notice of Intention to Appear and Statement of the position to be asserted and the ground therefor, together with copies of any supporting papers or briefs. Except as provided herein, no person shall be entitled to contest the terms and conditions of the Settlement, and persons who fail to object as provided herein shall be deemed to have waived, and shall forever be foreclosed from raising, any such objections.

9.     A fairness hearing shall be held before the undersigned at **10:00 a.m. on April 15, 2005** ("Fairness Hearing") for the purpose of considering: (a) whether the proposed settlement between the Sherman Act Class Plaintiffs, members of the Sherman Act Class, and defendants Abbott and Geneva is fair, reasonable, and adequate and should be finally approved by the Court; and (b) whether Sherman Act Class Counsel's application for attorneys' fees, expenses and costs, and for incentive awards for the Representative Plaintiffs, should be granted.

DONE and ORDERED in Chambers, in Miami, Florida, on this 25th day of February, 2005.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:
U.S. Magistrate Judge Theodore Klein
All Counsel of Record

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
SOUTHERN DIVISION

CASE NO. 99-MDL-1317-SEITZ/KLEIN

In re TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION
_____/

This Notice pertains to:

*Louisiana Wholesale Drug Co.,*    *Valley Drug Co., et al. v. Abbott*
*Inc., et al. v. Abbott Labs., et al.,*    *Labs., et al.,* Civ. No. 99-7143-S/G
Civ. No. 98-3125-S/G (S.D. Fla.)    (S.D. Fla.)

NOTICE OF PROPOSED CLASS ACTION
SETTLEMENT AND HEARING REGARDING SETTLEMENT

*PLEASE READ THIS NOTICE FULLY AND CAREFULLY. A SETTLEMENT HAS BEEN PROPOSED IN PENDING CLASS ACTION LITIGATION THAT MAY AFFECT YOUR RIGHTS. IF YOU ARE A MEMBER OF THE CLASS DESCRIBED BELOW, YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT FUND.*

TO:    All persons who purchased Hytrin, also known by the chemical name terazosin hydrochloride, directly from Abbott Laboratories at any time during the period commencing March 31, 1998 through and including June 30, 2001.

EXCLUDED FROM THE CLASS ARE: (1) Defendants Abbott Laboratories, Geneva Pharmaceuticals, Inc. (now known as Sandoz Inc.), Zenith Goldline Pharmaceuticals, Inc. (now known as Ivax Pharmaceuticals, Inc.), their officers, directors, management, employees, subsidiaries, and affiliates; (2) each of the following entities, and any and all claims of each said entity that have been asserted, or could have been asserted, in *In re Terazosin Hydrochloride,* Case No. 99 MDL 1317 arising out of Hytrin or generic terazosin hydrochloride purchases by said entity: CVS Meridian, Inc., Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., The Stop & Shop Supermarket Co., and Hy-Vee, Inc.; and (3) Kaiser Foundation Health Plan, Inc. and the Kaiser entities on whose behalf it has asserted claims in paragraph 8 of its complaint in 99 MDL 1317.

## I.   **PURPOSE OF NOTICE**

Pending in this Court are cases brought by Louisiana Wholesale Drug Co., Inc. ("Louisiana Wholesale") and Valley Drug Co. ("Valley Drug") (collectively, "Class Plaintiffs" or "Class Representatives") under the federal antitrust laws on behalf of themselves and a class of similarly situated persons, against defendants Abbott Laboratories ("Abbott"), and Geneva Pharmaceuticals, Inc. ("Geneva") (now known as Sandoz, Inc.), alleging a conspiracy to violate the federal antitrust laws. Abbott and Geneva will be referred to below collectively as "Defendants." Previously, notice (dated March 13, 2002) had been given of a settlement with another defendant, Zenith Goldline Pharmaceuticals, Inc. ("Zenith"), now known as Ivax Pharmaceuticals, Inc. ("Ivax"). That settlement was finally approved by the Court on June 13, 2002.[1]

This Notice is given pursuant to Federal Rule of Civil Procedure 23 and by Order of the United States District Court for the Southern District of Florida (the "Court") for the purpose of informing you of your rights with regard to:

(a)    the Court's ruling that this lawsuit may be settled as a class action, with Louisiana Wholesale and Valley Drug as class representatives, on behalf of all persons who purchased Hytrin, also known by the chemical name terazosin hydrochloride, directly from Abbott Laboratories at any time during the period commencing March 31, 1998 through and

---

[1] Under that settlement ("Zenith Settlement"), Zenith paid $2,072,327 into an escrow account. The payments by Zenith, plus all interest earned on such payments, will be used to reimburse costs and expenses of this litigation, thereby effectively increasing the amount of the Net Settlement Fund available to distribute to members of the Class (defined below). The Zenith Settlement provided Zenith with the right to terminate the settlement if certain specified conditions occurred. Should the settlement between the Class *and Abbott and Geneva* described in *this notice* become final, and provided that the Court in its final order of approval of the Abbott and Geneva settlement re-affirms that all of the terms of the Zenith Settlement, including class-wide releases and the other provisions of the Zenith Settlement incorporated into the June 13, 2002 final judgment remain in full force and effect (except for any obligation for Zenith to pay up to $25,000 in notice costs, which obligation Plaintiffs have excused), then, in that event, to the extent Zenith has retained any enforceable rights to terminate the Zenith Settlement (which Plaintiffs dispute), those rights are forever expunged, the Zenith Settlement funds may be used for the benefit of the Class as the Court may direct, and the Zenith Settlement and all of its terms, including releases given by members of the Class, remain in full force and effect.

including June 30, 2001. Excluded from the Class are: (1) defendants Abbott Laboratories, Geneva Pharmaceuticals, Inc, (now known as Sandoz Inc.), Zenith Goldline Pharmaceuticals, Inc. (now known as Ivax Pharmaceuticals, Inc.), their officers, directors, management, employees, subsidiaries, and affiliates; (2) each of the following entities, and any and all claims of each said entity that have been asserted, or could have been asserted, in *In re Terazosin Hydrochloride*, Case No. 99 MDL 1317 arising out of Hytrin or generic terazosin hydrochloride purchases by said entity: CVS Meridian, Inc., Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., The Stop & Shop Supermarket Co., and Hy-Vee, Inc.; (3) Kaiser Foundation Health Plan, Inc. and the Kaiser entities on whose behalf it has asserted claims in paragraph 8 of its complaint in 99 MDL 1317 ("the Class" or "the Sherman Act Class");[2]

(b)      a proposed settlement (the "Settlement") as described below of the above-referenced litigation on behalf of the Sherman Act Class in exchange for a cash payment by defendant Abbott of $43.5 million and a cash payment by defendant Geneva of $29 million, for a total amount paid by these Defendants combined of $72.5 million in cash (the "Settlement Fund"); and,

(c)      a fairness hearing scheduled to be held on **April 15, 2005 at 10:00 a.m.**, before The Honorable Patricia A. Seitz, United States District Judge for the United States District Court for the Southern District of Florida, in the Fifth Floor Courtroom, United States Courthouse, 301 North Miami Avenue, Miami, Florida (the "Fairness Hearing").

---

[2] Other cases challenging the same conduct by Abbott, Geneva, and Zenith were filed on behalf of consumers and other persons who purchased Hytrin indirectly, *i.e.*, from sources other than Abbott, and on behalf of persons that paid for all or part of such indirect purchases, including third-party payors such as insurance companies or health care plans. The proposed settlement described in this Notice relates *only* to the Class of direct purchasers of Hytrin from Abbott as defined above. NEITHER CONSUMERS NOR THIRD-PARTY PAYORS ARE PART OF THE CLASS TO WHOM THIS NOTICE IS DIRECTED.

The purpose of the Fairness Hearing will be to consider whether to approve: (1) the proposed settlement between the Sherman Act Class and defendants Abbott and Geneva as fair, reasonable, adequate, and in the best interests of the Sherman Act Class; (2) a proposed Plan of Allocation to allocate the settlement proceeds among Sherman Act Class members; and (3) the application by Class Counsel for an award of attorneys' fees and costs, and the application for incentive awards for the Class Representatives, as described below. The Court may continue or reschedule the hearing; if the Court does so, the Class Counsel will advise the Sherman Act Class by posting a conspicuous notice at the internet web sites www.bsfllp.com and www.garwingerstein.com.

(d)　　Right to Object: Sherman Act Class members also are hereby advised of their right to object (by filing with the Clerk of the Court no later than April 8, 2005) and/or appear at the Fairness Hearing; or to elect to exclude themselves from the Sherman Act Class (by written notice received by the claims administrator no later than March 31, 2005), as explained further below. This Settlement is contingent upon Defendants not electing to terminate the Settlement in the event that the confidential threshold for exclusions from the Class is exceeded, or in the event other triggering events occur that are referenced in the Settlement Agreement. In the event any triggering event occurs that would permit Defendants to terminate the Settlement, Defendants must decide whether to terminate the Settlement at a date certain prior to the Fairness Hearing as provided for by the Settlement Agreement.

## II.　THE LITIGATION

A.　**Class Representatives' Claims**　　On December 18, 1998, plaintiff Louisiana Wholesale filed an action in the United States District Court for the Southern District of Florida

-4-

alleging violations of the federal antitrust laws, specifically the Sherman Act and the Clayton Act, against defendants Abbott, Geneva and Zenith. Louisiana Wholesale alleged, among other things, that Abbott entered into an agreement with Geneva, pursuant to which Abbott agreed to pay Geneva millions of dollars in exchange for Geneva's agreement to refrain from marketing its generic version of Hytrin until Abbott's then-pending patent infringement suit against Geneva was resolved. Louisiana Wholesale alleged that the Abbott/Geneva Agreement, as well as a similar agreement between Abbott and Zenith (collectively "the Agreements"), were illegal under Section 1 of the Sherman Act, and caused direct purchasers of Hytrin to be overcharged for terazosin hydrochloride ("terazosin") because the agreements kept less expensive generic versions of Hytrin off the market.

On August 30, 1999, plaintiff Valley Drug filed a similar complaint challenging the Abbott/Geneva Agreement, alleging similar antitrust violations against Abbott and Geneva. The Louisiana Wholesale and Valley Drug cases were consolidated by the Court on October 22, 1999. Louisiana Wholesale and Valley Drug are hereafter referred to as the "Class Representatives" or "Class Plaintiffs."

### B.    Defendants' Denial Of Liability

Defendants Abbott and Geneva vigorously dispute Class Plaintiffs' claims that the Agreements were illegal. Defendants also deny Class Plaintiffs' claims that the Agreements caused Class Plaintiffs and members of the Sherman Act Class any harm. For example, defendants assert, among other defenses, that Geneva would not have come to market earlier with its cheaper generic product, even without the Abbott/Geneva Agreement, because of the risk of liability if Abbott won its then pending patent suit against Geneva relating to Geneva's proposed generic terazosin product. Defendants also assert that technical problems in manufacturing Geneva's terazosin product

prevented it from bringing its product to market any earlier than August 1999, when it actually launched its product.

### C. Status of the Litigation

On February 11, 2000, the Court appointed the law firms of Garwin Gerstein & Fisher LLP and Boies, Schiller & Flexner LLP as Co-Lead Counsel for the Sherman Act Class cases. Since that time, Co-Lead Counsel and lawyers working at their direction (collectively "Class Counsel") have prosecuted this lawsuit on behalf of the Sherman Act Class.

#### 1. Class Certification

On November 30, 1999, Class Counsel and the Class Plaintiffs moved for certification of the Sherman Act Class. On September 20, 2001, the Court certified the Sherman Act Class with Louisiana Wholesale and Valley Drug as Class Representatives. Defendants appealed the Court's order certifying the Sherman Act Class.

On November 14, 2003, the Eleventh Circuit Court of Appeals vacated the Court's order certifying the Sherman Act Class, and remanded the case for further proceedings to determine, among other things, whether there were conflicts of interest between the Class Representatives and members of the Sherman Act Class in connection with the prosecution of this litigation.

In March 2004, the Class Representatives filed a renewed motion for class certification. On June 23, 2004, the Court denied that motion, holding that, although "...the evidence indicates there is no class antagonism or conflict," the Sherman Act Class could not be certified at that time because of the possibility of potential unforeseen conflict in the future with regard to this litigation.[3]

---

[3] If this proposed settlement is terminated for any reason or is not approved by the Court, the Class Representatives have the right to appeal the Court's June 2004 Order denying their renewed motion for class certification at the conclusion of the litigation.

On February 25, 2005, this Court certified the Sherman Act Class, holding, among other things, that because the proposed settlement would end the litigation, there was no longer any possibility of a future conflict of interest with regard to this litigation. Moreover, if any member of the Sherman Act Class does not believe that this Settlement is in its best interests, or for any other reason, such class member may exclude itself from the Sherman Act Class. *See* Section VII below. If for any reason any Class member, who does not timely exclude itself from the Class, believes that the Settlement is unfair, unreasonable, or inadequate, such Class member may submit an objection to the Settlement and be heard at the Fairness Hearing. *See* Section IX below.

## 2.   Class Plaintiffs' Substantive Claims

On December 13, 2000, the Court found that the Abbott/Geneva Agreement was *per se* illegal under Section 1 of the Sherman Act. Defendants appealed the Court's decision. On September 15, 2003, the Eleventh Circuit Court of Appeals reversed the Court's December 13, 2000 order, and remanded for further proceedings. On January 5, 2005, upon consideration of additional briefing by the parties, the Court again held that the Abbott/Geneva Agreement was *per se* illegal. On January 21, 2005, the Court denied Defendants' request for permission to immediately appeal the Court's *per se* ruling to the Eleventh Circuit Court of Appeals. On February 9, 2005, Defendants filed a Writ of Mandamus, asking the Eleventh Circuit to review and vacate the Court's January 5, 2005 *per se* ruling or the Court's January 21, 2005 refusal to permit an immediate appeal of the *per se* ruling. That Writ of Mandamus is currently pending. Whether or not the Writ is granted, Defendants will have the right to appeal the Court's *per se* ruling after a final judgment in this case.

Although the Court has ruled (subject to Defendants' right to appeal) that the Abbott/Geneva Agreement is a *per se* violation of Section 1 of the Sherman Act, in order to recover monetary damages in this case, Class Plaintiffs still would have been required to prove that the Agreement

-7-

caused them damage in a quantifiable amount. As described above, defendants vigorously contend that the Agreement did not delay Geneva's (or any generic manufacturer's) entry into the market with a generic version of Hytrin, and thus did not cause plaintiffs or members of the Class to incur any damages.

At the time that the proposed settlement was reached, discovery in the case, which included the review of hundreds of thousands of pages of documents, and the depositions of dozens of fact and expert witnesses, had been completed. As a result, Class Counsel had conducted an intensive investigation, and obtained significant knowledge regarding the strengths and weaknesses of the claims and defenses in this case before entering into settlement negotiations with Defendants.

In the event Defendants elect to terminate this Settlement under the terms of the Settlement Agreement, or if the Settlement is otherwise not consummated, the parties' stipulation as to class certification would become null and void. In that event, the Court could order the trial scheduled for May 2005 to proceed on behalf of the Representative Plaintiffs only, and not on behalf of any other member of the Class.

OTHER THAN AS SPECIFICALLY INDICATED ABOVE REGARDING THE *PER SE* ILLEGALITY OF THE ABBOTT/GENEVA AGREEMENT, THE COURT HAS NOT RULED ON THE MERITS OF ANY OF THE CLAIMS OR DEFENSES ASSERTED BY THE PARTIES. THIS NOTICE IS NOT TO BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION BY THIS COURT AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES ASSERTED BY EITHER SIDE.

### III.    SUMMARY OF THE PROPOSED SETTLEMENT

Subject to the terms and conditions of the settlement agreement with Abbott and Geneva ("the Settlement Agreement"), which is on file with the Court as Exhibit "A" to the Sherman Act Class Plaintiffs' February 24, 2005 Motion for Preliminary Approval, a copy of which is also available at www.bsflp.com or www.garwingerstein.com, Abbott has paid $43.5 million, and

Geneva has paid $29 million (for a combined total of $72.5 million in cash) into an escrow account for the benefit of the Sherman Act Class. Defendants do not admit any wrongdoing or liability. The proposed settlement is a compromise of disputed claims and does not mean that any defendant in this action has been found liable for the claims made by the Class Plaintiffs.

The Settlement Agreement also provides that if Class members who validly exclude themselves from the Class pursuant to Section VII below collectively have aggregate potential damages (as calculated by Class Plaintiffs' expert economist, based on the amount of their purchases of Hytrin and/or generic versions of Hytrin reflected in the sales records of Abbott, Geneva, and non-party, Mylan Pharmaceuticals, Inc.) that exceed a confidential number agreed upon with Abbott and Geneva, then Abbott and Geneva may exercise their right to terminate the Settlement as provided for under the Settlement Agreement.[4]

If the Settlement is finally approved by the Court, Abbott and Geneva, and their past, present and future parents, subsidiaries, divisions, affiliates, stockholders, officers, directors, insurers, general or limited partners, employees, agents, attorneys and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing) (the "Released Parties") are and shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that Plaintiffs or any member or members of the Class who has (have) not timely excluded itself (themselves) from the Class, whether or not they object to the Settlement and whether or not they make a claim upon or participate in the Settlement Fund, ever

---

[4] Under the Settlement Agreement, Abbott and Geneva may also have the right to terminate this Settlement prior to the Fairness Hearing (described below) if certain other conditions set out in paragraph 13 of the Settlement Agreement are satisfied (see www.bsfllp.com and www.garwingerstein.com).

had, now has, or hereafter can, shall or may have, arising out of any conduct alleged in the Actions or in any other complaint filed in any action consolidated or coordinated in 99 MDL 1317, or otherwise relating to any alleged delay in marketing or selling of generic equivalents of Hytrin, prior to the date of the Settlement Agreement (the "Released Claims").[5] Plaintiffs and each member of the Class covenant and agree that each shall not sue or otherwise seek to establish or impose liability against any Released Party based, in whole or in part, on any of the Released Claims.

Any disputes arising under or relating to the Settlement Agreement, including, but not limited to, the releases in the Settlement Agreement, will be resolved in the United States District Court for the Southern District of Florida,

The foregoing text is only a summary of the Settlement with Abbott and Geneva. A full copy of the Settlement Agreement, including the release, is attached as Exhibit "A" to Sherman Act Class Plaintiffs' February 24, 2005 Motion for Preliminary Approval on public file with the United States District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida. Class counsel have made copies of the settlement agreement readily available at www.bsfllp.com or www.garwingerstein.com.

Certain individual direct purchasers (or purchasers suing based upon an assignment of rights from members of the Class) have brought their own lawsuits against Abbott and Geneva. These individual plaintiffs will not share in the proposed Settlement with the Sherman Act Class.

---

[5] The Settlement Agreement expressly provides that: "Released Claims shall not include claims arising in the ordinary course of business between Class members and the Released Parties concerning product liability, breach of warranty, breach of contract (other than breach of contract based in whole or in part on any conduct challenged by any plaintiff in 99 MDL 1317), personal or bodily injury, or any claim of any sort that does not relate to Hytrin or terazosin hydrochloride. Released Claims also shall not include any claim asserted in 99 MDL 1317 by any of the following entities based upon an assignment to said entity arising out of Hytrin or generic terazosin hydrochloride purchases of said entity: CVS Meridian, Inc., Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., The Stop & Shop Supermarket Co., and Hy-Vee, Inc.; this settlement shall not be construed to disturb or affect any such assigned claim."

The Court preliminarily approved the proposed Settlement with Abbott and Geneva on February 25, 2005 after a hearing on February 24, 2005. The Court found the proposed settlement, upon preliminary review, to be within the range of reasonableness given the present posture of this case.

Accordingly, the Court has set a Fairness Hearing in order to determine whether the proposed settlement with Defendants should finally be approved as described in Section VIII, below.

## IV. PLAN OF ALLOCATION

In the event the proposed settlement is approved by the Court and becomes final, the Settlement Fund will be distributed in accordance with a proposed Plan of Allocation approved by the Court. Plaintiffs will file the Plan of Allocation with the Court on or before April 5, 2005. The Plan of Allocation will be based upon proofs of claim to be filed by class members at a later time. You may be required as a condition of participating in the recovery to present evidence of your purchases of brand name Hytrin and generic terazosin during the period **March 31, 1998 through and including June 30, 2001** (the "Class Period"). In summary, the Settlement Fund totaling $72.5 million plus interest, less administrative expenses, taxes, attorneys' fees and expenses, and incentive payments to the two Class Representatives as may be allowed by the Court (the "Net Settlement Fund"),[6] will be allocated to Class members who choose not to exclude themselves from the Class (*see* Section VII below for an explanation of how to exclude yourself from the Class) as follows: The Net Settlement Fund will be allocated based on a *pro rata* share of the total estimated actual overcharge damages of all class members making valid claims (at a later date after the Settlement

---

[6] If the proposed Settlement with Abbott and Geneva is finally approved, the proceeds of the Zenith Settlement ($2,072,327), plus interest, upon authorization from the Court, will be applied to the costs and expenses incurred in this litigation, thereby reducing the amount that will be deducted from the settlement fund to reimburse class counsel for the outlay of such costs and expenses. Class counsel will not seek any attorneys' fees from the proceeds of the Zenith Settlement.

becomes final) allegedly incurred as a result of the Defendants' alleged restraint of trade. Class Representatives claim their damages are measured by an "overcharge," *i.e.*, the amount by which Class members overpaid for terazosin as a result of the Defendants' conduct, which allegedly caused a delay in the entry into the market of less expensive generic versions of terazosin.

According to Class Plaintiffs, if generic entry had occurred earlier, direct purchasers would have realized significant savings by: (a) substituting Hytrin with less expensive generic versions of terazosin for some or all of their terazosin requirements; and/or (b) obtaining increased discounts, rebates, or lower prices on purchases of the brand name Hytrin after generic terazosin had entered the market; and/or (c) paying less for generic terazosin on or after October 1, 1999 (the date Plaintiffs believe that a second generic terazosin manufacturer would have entered the market had the alleged conduct in restraint of trade not occurred).

For purposes of allocation of the Net Settlement Fund, it is anticipated that damages will be estimated based on the following formulas (class members have damages under any one or all of the formulas as may be applicable):

(1) the quantity of generic terazosin that each Class member purchased from any source from August 13, 1999 through June 30, 2001 as a substitute for buying brand-name Hytrin from Abbott, multiplied by the average differential in price between the brand and generic forms of terazosin (*i.e.*, the price savings due to the ability to substitute with cheaper generics);

(2) the quantity of generic terazosin that each Class member purchased from October 1, 1999 through June 30, 2001, multiplied by the price differential between the actual price paid for the generic and the price that allegedly would have been paid had there been no alleged delay in generic entry; and

(3)    the quantity of brand-name Hytrin that each Class member purchased from October 1, 1998 through June 30, 2001, multiplied by the price differential between the actual price paid and the price that allegedly would have been paid for Hytrin had there been no alleged delay in generic entry.

Based upon substantial analysis and investigation, Plaintiffs believe that in the absence of Defendants' alleged restraint of trade, it is unlikely that generic versions of terazosin would have been on the market prior to October 1, 1998. Thus, it is also very unlikely that more than nominal overcharge damages were incurred with respect to Hytrin purchases made *before* that date. Accordingly, for those Class members who, during the Class Period (a) purchased Hytrin directly from Abbott *only* from March 31, 1998 through September 30, 1998, *and* (b) who also did *not* purchase any generic terazosin directly from any generic manufacturer from October 1, 1999 through June 30, 2001, nominal damages of a few cents per capsule will be awarded for each Hytrin capsule purchased.[7]

## V.    FEES, EXPENSES, AND INCENTIVE AWARDS

All costs and fees related to this litigation will be paid out of the proceeds of the Settlement Fund as the Court may order. Class Counsel intend to apply to the Court for attorneys' fees of up to thirty-three and one-third percent (33 1/3 %) of the gross Settlement Fund, including interest. In addition, Class Counsel intend to seek, from the Settlement Fund, reimbursement for any costs and expenses incurred in this litigation not otherwise reimbursed by the funds procured from the Zenith Settlement. Moreover, applications will also be made to the Court for incentive awards of $75,000, in total, for the two Class Representatives, to compensate them for their efforts in prosecuting this

---

[7] Combined Hytrin purchases by Class members who purchased only during this early part of the Class Period amount to only approximately 0.025% of the total terazosin purchases by all Class members during the entire Class Period.

case on behalf of the Sherman Act Class, which efforts have included, among other things, submitting to depositions, producing hundreds of pages of documents, producing electronic purchase data, and providing written discovery. Class Counsel will file their Motion in Support of Final Approval of this Settlement, the Plan of Allocation, application for an award of attorneys' fees, reimbursement of costs and expenses, and request for incentive awards to the Class Representatives with the Clerk of the U.S. District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida on or before April 5, 2005. The application and other documents will be available for inspection during normal business hours at the office of the Clerk or on the website of www.bsfllp.com or www.garwingerstein.com.

## VI.    HOW TO PARTICIPATE IN THIS CLASS ACTION AND SETTLEMENT

**If you wish to remain a member of the Class, you need not do anything at this time.** All members of the Class will be entitled to share in the proceeds of this Settlement as described above and according to the terms of the Settlement Agreement if it is finally approved by the Court, and all members of the Class will be bound by the final judgment and release of claims against Abbott and Geneva entered by the Court. Class Counsel has been appointed by the Court to represent you as a member of the Class. All fees and expenses of Class Counsel will be paid out of any recovery by the Class. You will not have to pay Class Counsel any additional amounts, and in no event will you be obliged to pay any judgment, court costs, or lawyers' fees for participating in this class action. In addition, any Class member who does not request exclusion from the Class may also enter an appearance through their own counsel at their own expense. The pleadings and other public records in this litigation may be examined and copied at the cost of 50 cents per page at any time during regular business hours at the Office of the Clerk of Court, 301 North Miami Avenue, Miami, Florida.

## VII.   HOW TO BE EXCLUDED FROM THE CLASS

If you wish to be excluded from the Sherman Act Class you may do so by mailing a written request for exclusion which must be received by the Claims Administrator on or before **March 31, 2005** at the following address: Terazosin Hydrochloride Antitrust Litigation, c/o Heffler, Radetich & Saitta L.L.P., P.O. Box 150, Philadelphia, PA 19105-0150. The request for exclusion must: (1) clearly state your name, address, and the name of the case (*In re Terazosin Hydrochloride Litigation*), and (2) clearly state that you wish to be excluded from the Sherman Act Class. You do not have to state the reason for this request.

If you exclude yourself from the Sherman Act Class in this way, you will NOT be entitled to appear at the Fairness Hearing, OR to share in the benefits of the Settlement, and you will NOT be bound by the release of Defendants summarized in this notice.

## VIII.   FAIRNESS HEARING

Pursuant to an Order of the Court, a hearing will be held on **April 15, 2005 at 10 a.m.**, in the courtroom of the Honorable Patricia A. Seitz, Fifth Floor, United States District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida, for the purpose of determining whether the Court should approve: (1) the proposed settlement between the Sherman Act Class and defendants Abbott and Geneva as fair, reasonable, adequate, and in the best interests of the Sherman Act Class; (2) a proposed Plan of Allocation for distributing the net settlement proceeds to the members of the Sherman Act Class; and (3) the application of Class Counsel for an award of attorneys' fees and costs, and the application for incentive awards for the Sherman Act Class Representatives. You are entitled to appear and be heard at this hearing. The time and date of the hearing may be continued or rescheduled without further notice. If you have no objection to the

Settlement with Abbott and Geneva, it is not necessary to appear at the hearing or to take any action at this time.

## IX.  OBJECTIONS TO THE PROPOSED SETTLEMENT

Any member of the Sherman Act Class who does not exclude itself from the Class may appear at the Fairness Hearing in person or by duly authorized attorney and show cause why the Settlement should not be approved as fair, reasonable and adequate, or to oppose or comment on any other subject of the hearing (including, for example, the Plan of Allocation, and request for attorneys' fees), *provided* that the class member files with the Office of the Clerk, Southern District of Florida, 301 North Miami Avenue, Miami, Florida, a Notice of Intention to Appear and a Summary Statement of the position asserted and the grounds therefor, together with copies of any supporting papers or briefs, on or before **April 8, 2005, and causes a copy to be received by Co-Lead Counsel for the Class on the same day.**[8]  The Court will not consider any paper or brief submitted after April 8, 2005.  Unless a Class member files the *Notice* and *Summary* described above, it shall not be entitled to contest the terms and conditions of the proposed Settlement or to appear in person at the hearing, and may be deemed to have waived any such objections.

## X.   ADDITIONAL INFORMATION

The pleadings and other records in this litigation may be examined and copied during regular hours at the Office of the Clerk, United States District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida.  Copies of the Motion for Preliminary Approval of the Settlement, this Notice, and (when filed on April 5, 2005) the Proposed Plan of Allocation, Motion

---

[8]You need not appear at the hearing in order to object.  The Notice of Intention to Appear and Summary Statement, and any accompanying papers, must include in a prominent location the name of the case, "*In re Terazosin Hydrochloride Litigation,*" the "MDL" case number (99-MDL-1317), and the Judge's name (the Honorable Patricia A. Seitz).

for Final Approval and Application for Attorneys' Fees and Incentive Awards for the Representative

Plaintiffs will also be available at www.bsfllp.com or www.garwingerstein.com.

Any questions that you have concerning the matters contained in this Notice may be directed

in writing to the Co-Lead Counsel for Sherman Act Class:

Richard B. Drubel
Kimberly Schultz
**BOIES, SCHILLER
  & FLEXNER, L.L.P.**
26 South Main Street
Hanover, NH 03755
Telephone: (603) 643-9090
Email: rdrubel@bsfllp.com

Bruce E. Gerstein
Barry S. Taus
**GARWIN GERSTEIN & FISHER LLP**
1501 Broadway, Suite 1416
New York, NY 10036
Telephone: (212) 398-0055
Email: btaus@garwingerstein.com

## PLEASE DO NOT ADDRESS ANY INQUIRIES TO THE COURT.

Dated: March 1, 2005 in Miami, Florida.