Nicole M. Norris (SBN 222785)
WINSTON & STRAWN LLP
101 California Street, Suite 3900
San Francisco, CA 94111-5894
Telephone: 415-591-1000
Facsimile: 415-591-1400
Email: nnorris@winston.com

James F. Hurst (*Admitted Pro Hac Vice*)
David J. Doyle (*Admitted Pro Hac Vice*)
Samuel S. Park (*Admitted Pro Hac Vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone: 312-558-5600
Facsimile: 312-558-5700
Email: jhurst@winston.com; ddoyle@winston.com;
spark@winston.com

Charles B. Klein (*Admitted Pro Hac Vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20007
Telephone: 202-282-5000
Facsimile: 202-282-5100
Email: cklein@winston.com

Attorneys for Defendant
ABBOTT LABORATORIES

**Winston & Strawn LLP**
**35 W. Wacker Drive**
**Chicago, IL 60601-9703**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| MEIJER, INC. & MEIJER DISTRIBUTION, INC., on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>ABBOTT LABORATORIES,<br><br>        Defendant.<br><br>    [caption continues next page] | **Case No. C 07-5985 CW**<br><br>*Related by Order to:*<br><br>*Case No. C 04-1511 CW*<br><br>**ABBOTT LABORATORIES' REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES**<br><br>The Honorable Judge Wilken |

**Winston & Strawn LLP**
**35 W. Wacker Drive**
**Chicago, IL 60601-9703**

| | |
|---|---|
| ROCHESTER DRUG CO-OPERATIVE, INC., ) on behalf of itself and all others similarly situated, | **Case No. C 07-6010 CW** |
| ) | *Related by Order to:* |
| ) | |
| Plaintiffs, ) | *Case No. C 04-1511 CW* |
| ) | |
| vs. ) | |
| ) | |
| ABBOTT LABORATORIES, ) | |
| ) | |
| Defendant. ) | The Honorable Judge Wilken |
| ) | |

| | |
|---|---|
| LOUISIANA WHOLESALE DRUG COMPANY, INC., on behalf of itself and all others similarly situated, | **Case No. C 07-6118 CW** |
| ) | *Related by Order to:* |
| ) | |
| Plaintiffs, ) | *Case No. C 04-1511 CW* |
| ) | |
| vs. ) | |
| ) | |
| ABBOTT LABORATORIES, ) | |
| ) | The Honorable Judge Wilken |
| Defendant. ) | |
| ) | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

CASE NOS. C 07-5985, C 07-6010, C 07-6118 - ABBOTT LABORATORIES' REPLY IN SUPPORT OF ITS
MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     ARGUMENT ......................................................................................................3

     A.    Plaintiffs Fail To Address The Discovery Standard, Under Which Any Doubt As To The Potential Relevance Of Downstream Discovery To Class Certification Should Be Resolved In Abbott's Favor. ....................................................3

     B.    The Requested Discovery Is Relevant To Whether A Fundamental Intra-Class Conflict Exists................................................................................................4

          1.    Putative Class Members Likely Would Have Antagonistic Views On The Proper Theory Of Liability In This Case. ....................................................4

          2.    Abbott Has The Right To Explore, And The Court Has A Duty To Consider, These Potential Intra-Class Conflicts. ....................................................6

          3.    Plaintiffs Cannot Circumvent The Rule 23 Prerequisites By Claiming That Opt-Out Rights Will Cure Any Intra-Class Conflicts. ....................................7

          4.    The Unsworn Attorney Letters Carry No Weight..........................................8

     C.    At Most, Plaintiffs Have Shown A Split In Authority Concerning Downstream Discovery In The Class Certification Context, But The Weight Of The Authority And Common Sense Supports Abbott's Position.........................................9

          1.    Neither The Supreme Court Nor The Ninth Circuit Has Addressed The Issue Raised In Abbott's Motion. ........................................................9

          2.    The Weight Of The Relevant Authority Supports Abbott's Position. ..............11

     D.    The Requested Discovery Is Narrowly Tailored And Would Not Impose Any Undue Burden on Plaintiffs. ........................................................13

III.    CONCLUSION................................................................................................15

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

i

CASE NOS. C 07-5985, C 07-6010, C 07-6118 - ABBOTT LABORATORIES' REPLY IN SUPPORT OF ITS
MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.*,
    247 F.R.D. 156 (C.D. Cal. 2007) ..................................................................................11, 12

*Alperin v. Vatican Bank*,
    410 F.3d 532 (9th Cir. 2005) ...............................................................................................3

*Arizona v. Shamrock Foods Co.*,
    729 F.2d 1208 (9th Cir. 1984) ...........................................................................................11

*Beverly v. Network Solutions, Inc.*,
    1998 U.S. Dist. LEXIS 20453 (N.D. Cal. Dec. 30, 1998) ....................................................8

*Bishop v. Committee on Prof'l Ethics*,
    686 F.2d 1278 (8th Cir. 1982) .............................................................................................6

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) .........................................................................................5, 11

*Blankenship v. Hearst Corp.*,
    519 F.2d 418 (9th Cir. 1975) ...............................................................................................3

*Chism v. County of San Bernardino*,
    159 F.R.D. 531 (C.D. Cal. 1994) .........................................................................................3

*Cummings v. Connell*,
    316 F.3d 886 (9th Cir. 2003) .............................................................................................11

*Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*,
    523 F.3d 1116 (9th Cir. 2008) ...........................................................................................11

*Epstein v. MCA, Inc.*,
    179 F.3d 641 (9th Cir. 1999) .........................................................................................4, 11

*Hanover Shoe v. U.S. Machinery Corp.*,
    392 U.S. 481 (1968)......................................................................................................9, 10

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977)................................................................................................9, 10, 11

*In re Buspirone Patent Litig.*,
    210 F.R.D. 43 (S.D.N.Y. 2002) .........................................................................................13

*In re Carbon Dioxide Antitrust Litig.*,
    MDL 940 (M.D. Fla. Dec. 10, 1992) .................................................................................13

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

ii

*In re Hypodermic Product Direct Purchaser Antitrust Litigation*,
   Nos. 05-CV-1602 and 05-CV-4465,
   2006 U.S. Dist. LEXIS 89353 (D.N.J. Sept. 7, 2006) ...................................................12

*In re Pressure Sensitive Labelstock Antitrust Litigation*,
   226 F.R.D. 492 (M.D. Pa. 2005).....................................................................................12

*In re Terazosin Hydrochloride Antitrust Litigation*,
   223 F.R.D. 666 (S.D. Fla. 2004).................................................................................8, 11

*In re Urethane Antitrust Litig.*,
   237 F.R.D. 454 (D. Kan. 2006).......................................................................................12

*In re Wellbutrin SR Direct Purchaser Antitrust Litigation*,
   2008 U.S. Dist. LEXIS 36719 (E.D. Pa. May 2, 2008) ..................................................13

*J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*,
   225 F.R.D. 208 (S.D. Ohio 2003) ...................................................................................13

*Jackson v. Montgomery Ward & Co.*,
   173 F.R.D. 524 (D. Nev. 1997).......................................................................................14

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ........................................................................................11

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) ............................................................................................7

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) ..........................................................................................7

*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*,
   246 F.R.D. 293 (D.D.C. 2007)........................................................................................13

*Micron Tech. v. Tessera*,
   2006 U.S. Dist. LEXIS 42076 (N.D. Cal. June 14, 2006) ...............................................14

*Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*,
   247 F.R.D. 253 (D. Mass. 2008)......................................................................................12

*Roehrs v. Minnesota Life Ins. Co.*,
   228 F.R.D. 642 (D. Ariz. 2005) .........................................................................................3

*Royal Printing Co. v. Kimberly-Clark Corp.*,
   621 F.2d 323 (9th Cir. 1980) ..........................................................................................11

*Soto v. City of Concord*,
   162 F.R.D. 603 (N.D. Cal. 1995).....................................................................................3, 9

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

*Thomas v. Hickman*,
    2007 U.S. Dist. LEXIS 95796 (E.D. Cal. Dec. 5, 2007) .........................................................14

*Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*,
    813 F.2d 1207 (Fed. Cir. 1987).........................................................................................8, 14

*Valley Drug Co. v. Geneva Pharmas., Inc.*,
    350 F.3d 1181 (11th Cir. 2003) ............................................................................ passim


**STATUTES**

Fed. R. Civ. P. 23(a) ...............................................................................................6, 9, 11

Fed. R. Civ. P. 23(a)(4)..................................................................................................6, 7

Fed. R. Civ. P. 23(e) ...........................................................................................................6

Fed. R. Civ. P. 26 ...............................................................................................................3

Fed. R. Civ. P. 26(b)(1)......................................................................................................3

Fed. R. Civ. P. 26(b)(2)(C) ..............................................................................................15

Fed. R. Civ. P. 56(e) ........................................................................................................15


**OTHER AUTHORITIES**

C. Wright & A. Miller, Federal Practice and Procedure § 1765 (1972) ...........................6

*Fundamental Requirements for Class Suit*, 89 Harv. L. Rev. 1454 (1976).....................7

Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 3.30 (4th ed. 2002) ..................7

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

CASE NOS. C 07-5985, C 07-6010, C 07-6118 - ABBOTT LABORATORIES' REPLY IN SUPPORT OF ITS
MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

I.     **INTRODUCTION**

In its motion to compel, Abbott explained that different members of the putative class have divergent economic interests with regard to the alternative theories of liability pursued by Plaintiffs, thus creating at least the potential for a fundamental conflict among putative class members.  Abbott seeks "downstream discovery" to explore this conflict and cited cases supporting Abbott's position that it is entitled to such discovery for this limited purpose.  These cases include the only Circuit court decision to have addressed the issue – a decision that reversed class certification based on the district court's foreclosure of identical discovery.  Abbott further explained that the discovery it seeks is not burdensome but, rather, primarily consists of transactional sales data likely stored electronically and easily accessible.

Plaintiffs try to cloud this straightforward discovery dispute in their opposition brief.  They rely primarily on authority holding that evidence showing a direct purchaser passed on overcharges to its customers is irrelevant to whether it can satisfy the antitrust injury element of a claim brought under the Sherman Act.  Abbott's motion, however, does not challenge this proposition.  The issue currently before the Court is whether, solely for the purposes of class certification, Abbott is entitled to discover a limited set of data and documents concerning Plaintiffs' sales relevant to whether Plaintiffs can meet their burden under Rule 23 of showing the absence of a fundamental conflict among putative class members.  This issue should be decided in Abbott's favor for the following four reasons:

First, Plaintiffs have failed to address the liberal standard governing a motion to compel.  At most, Plaintiffs have pointed to a split in authority as to whether downstream discovery is allowed in the class certification context.  As with any discovery motion, however, doubts with regard to whether Abbott is entitled to the requested discovery should be resolved in Abbott's favor.  Class certification will be determined later.  Again, the sole issue for the Court at this procedural juncture is simply whether Abbott is entitled to explore the potential intra-class conflicts it has raised.

Second, Plaintiffs do not dispute that some putative class members actually benefited from the higher prices of Norvir and Kaletra, a tacit concession that supports further exploration of whether a fundamental intra-class conflict exists.  As previously explained, and as explained in more

1

depth in the attached Supplemental Declaration of Joel Hay, Plaintiffs are pursuing alternative, and conflicting, theories of liability – each of which would be preferred by different subsets of the putative class. Plaintiffs completely ignore this fundamental conflict of interest among class members. Instead, they summarily argue, based primarily on unsworn attorney letters purportedly on behalf of only three (out of more than 100) putative class members, that "Abbott has no evidence that *any* class member believes that its own economic interests are best served by opting out." (Opp'n at 22 (emphasis added)). But this argument ignores that thirteen direct purchasers (a significant percentage of the putative class) already have opted-out, an extraordinary statistic further confirming that Abbott's arguments concerning a potential conflict among putative class members have merit and should be explored through discovery.

Third, the weight of pertinent authority supports Abbott's position that it is entitled to downstream discovery to explore this potential conflict among putative class members. The only Circuit court to have addressed that issue decertified a class because the district court foreclosed downstream discovery relevant to a potential conflict among class members. *See Valley Drug Co. v. Geneva Pharmas., Inc.*, 350 F.3d 1181 (11th Cir. 2003). *Valley Drug* makes perfect sense given the importance, from a due process perspective, of isolating and addressing fundamental intra-class conflicts. For this reason, the only court in this Circuit to touch on the issue raised in Abbott's motion cited *Valley Drug* with approval. And at least two other courts have expressly authorized downstream discovery in the class certification context. Plaintiffs cite – over-and-over again – only five out-of-circuit district court cases after *Valley Drug* holding that downstream discovery is irrelevant in the class certification context, but three of these decisions are unpublished and all but one come from within a single Circuit (the Third Circuit).

Finally, Plaintiffs' vague arguments that production of downstream discovery would impose complicated and expensive burdens on Plaintiffs is belied by the fact that Abbott seeks only a small portion of the very same type of information Plaintiffs have requested, and already received, from Abbott. Nor can Plaintiffs' conclusory claims of burden be reconciled with the discovery rules or their own decision to bring suit seeking "hundreds of millions" of dollars in overcharges and treble damages. (Opp'n at 3). By bringing this high-stakes litigation, Plaintiffs are in no position to

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

1    complain about having to produce discrete information about their own sales of only four drugs.

2    **II.    ARGUMENT**

3            As demonstrated below, the Court should authorize limited downstream discovery relevant to

4    whether Plaintiffs can satisfy the class action prerequisites.

### A.    Plaintiffs Fail To Address The Discovery Standard, Under Which Any Doubt As To The Potential Relevance Of Downstream Discovery To Class Certification Should Be Resolved In Abbott's Favor.

7            Plaintiffs make no effort to address the liberal discovery standard, which certainly authorizes

8    discovery on whether the class certification prerequisites have been met. Fed. R. Civ. P. 26(b)(1);

9    *see also Alperin v. Vatican Bank*, 410 F.3d 532, 554 (9th Cir. 2005). In the Ninth Circuit, "[t]he

10   party resisting discovery has a 'heavy burden' of showing why discovery should be denied." *Roehrs*

11   *v. Minnesota Life Ins. Co.*, 228 F.R.D. 642, 644 (D. Ariz. 2005) (quoting *Blankenship v. Hearst*

12   *Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)); *see also Chism v. County of San Bernardino*, 159 F.R.D.

13   531, 533 (C.D. Cal. 1994) ("The party opposing discovery has the burden of showing why discovery

14   should be denied, and the balancing of the potential benefits of disclosure against the potential

15   disadvantage is pre-weighted in favor of disclosure."). Thus, any doubts about the relevance of the

16   requested information should be resolved in favor of discovery. As this Court noted: "[A] judge

17   should resolve doubts about relevance in favor of disclosure, in part because she is not likely to

18   understand the case as well as . . . counsel, and thus is not likely to be able to foresee all the ways

19   [counsel] might be able to use the information, and in part because the standard set forth in Rule 26

20   is so broad." *Soto v. City of Concord*, 162 F.R.D. 603, 611 (N.D. Cal. 1995).

21           Given this liberal discovery standard, Plaintiffs must show more than a mere split in

22   authority on whether downstream discovery is relevant to class certification. To meet their "heavy

23   burden" of showing why the requested discovery should be foreclosed, especially given the amount

24   at issue in this case, Plaintiffs must demonstrate that under no circumstances could this discovery be

25   relevant to Abbott's defense to class certification that a fundamental intra-class conflict exists. As

26   demonstrated below, Plaintiffs have not met this burden.

27

28

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

**B.    The Requested Discovery Is Relevant To Whether A Fundamental Intra-Class Conflict Exists.**

In connection with Plaintiffs' motion for class certification, this Court must carefully consider under Rule 23 whether material intra-class conflicts exist and, if so, decline to certify the class or, if possible, address these conflicts by limiting the scope of the class or through separately represented subclasses (as the Court did in *Doe/SEIU*).  *See, e.g., Epstein v. MCA, Inc*., 179 F.3d 641, 648 (9th Cir. 1999).  As demonstrated below, the requested discovery as to potential conflicts among putative class members will facilitate the Court's "rigorous analysis" in determining whether "the party seeking certification has borne its burden" (6/11/07 *Doe/SEIU* Order at 4) – including not only the adequacy prerequisite, but the typicality and predominance prerequisites as well.

**1.    Putative Class Members Likely Would Have Antagonistic Views On The Proper Theory Of Liability In This Case.**

Plaintiffs argue that there is no class conflict "so long as class members share a common interest in maximizing overcharge damages."  (Opp'n at 17).  But this oversimplifies Abbott's argument.  As explained in the Hay Declaration attached to Abbott's motion, there is still a high likelihood of an intra-class conflict even assuming that all putative class members have an interest in maximizing their own recovery in this lawsuit because different direct purchasers would prefer antagonistic theories of liability depending, in part, on whether they have profited from the price increases at issue.  *See* Hay Decl. ¶¶ 25-27.

Plaintiffs have misconstrued this purported conflict as identical to the "'conflict' hypothesized by *Valley Drug*" and relating solely to whether they will seek injunctive relief or lost profits.  (*See* Opp'n at 1, 2, 14 & 19 n.17).  Thus, Dr. Hay has submitted a supplemental declaration clarifying that the potential intra-class conflict about which Abbott seeks discovery arises primarily out of three alternative, and conflicting, *theories of liability* uniquely asserted by Plaintiffs in this case.  Specifically, based on the declaration submitted by Plaintiffs' expert in support of class certification, Plaintiffs intend to prove liability by showing *either* that:  (1) any increase in the price of Norvir is anticompetitive; (2) any increase in the price of Norvir without a commensurate increase in the price of Kaletra is anticompetitive; *or* (3) Abbott's pricing structure is anticompetitive under a

4

1    *Cascade* liability standard.  Supp. Hay Decl. at ¶¶ 3, 5 (Ex. A).

2          Each theory of liability would likely have a different effect on Abbott's pricing going-

3    forward.  A finding of liability under theory one essentially would require Abbott to roll-back Norvir

4    prices to the December 2003 level, regardless of the price of Kaletra.  Even if Plaintiffs do not seek

5    an injunction, a finding that Abbott's current pricing results in compensable overcharges subject to a

6    treble damages award would likely serve as a *de facto* injunction compelling such a pricing roll-

7    back; otherwise, trebled overcharge damages would continue into the future.  A finding of liability

8    under theory two, in contrast, would permit Abbott to maintain the Norvir price if it increased the

9    price of Kaletra commensurately.  Finally, a finding of liability under theory three would likely

10   result in a higher Norvir price than under theory one, and would likely result in a higher Norvir price

11   and/or a lower Kaletra price than under theory two.  *Id.* at ¶¶ 4-14.

12         Significantly, Plaintiffs do not dispute that some direct purchasers actually profited from the

13   price increases at issue, while others did not.  This tacit concession proves Abbott's point.  Those

14   putative class members that have profited obviously would have a financial interest in pursuing a

15   theory of liability that would not curtail Abbott's ability to maintain or increase its current prices for

16   Norvir or Kaletra.  In contrast, other putative class members (for example, free clinics that do not

17   pass-on any costs and, perhaps, Plaintiffs themselves) would have an opposing financial interest in

18   pursuing a theory of liability that would require Abbott to roll-back its prices.  *See id.* at ¶¶ 15-19.

19         Moreover, other material differences exist among putative class members that relate to this

20   potential intra-class conflict.  For example, some direct purchasers primarily or exclusively

21   purchased Norvir (not Kaletra), whereas others primarily or exclusively purchased Kaletra (not

22   Norvir).  As Dr. Hay explains in more detail in his supplemental declaration, these differences –

23   especially when viewed in light of the fact that some putative class members profit from price

24   increases and others do not – give rise to additional fundamental conflicts among putative class

25   members as to which theory of liability should be pursued.  *See id.* at ¶¶ 20-24.

26         These conflicts go to the theories of liability in this case – *i.e.*, "the very heart of the suit."

27   *Blackie v. Barrack*, 524 F.2d 891, 919 (9th Cir. 1975).  If the putative class were certified, all class

28   members would be bound by the theory primarily advanced by Plaintiffs.  Thus, it is critical that the

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

5

1    Court rigorously determine whether all absent class members would be adequately represented.

2        **2.    Abbott Has The Right To Explore, And The Court Has A Duty To**
3            **Consider, These Potential Intra-Class Conflicts.**

4        Invoking the "fox guarding the hen house" metaphor (Opp'n at 19), Plaintiffs argue that the

5    Court should be skeptical of Abbott's "disingenuous" concern for protecting the interests of class

6    members. But this metaphor is a misguided attempt to circumvent Plaintiffs' burden of showing that

7    they will fairly and adequately protect the interests of, and bring claims typical of, the putative class.

8    *See* Fed. R. Civ. P. 23(a). To the extent Plaintiffs argue that Abbott cannot challenge – and the

9    Court should accept at face-value – their allegation that they can adequately represent the putative

10   class, this argument is absurd and contrary to Rule 23.

11       In fact, while Abbott clearly has a financial interest in defeating class certification, Plaintiffs

12   too (especially their lawyers, who could stand to collect millions of dollars in fees if a class were

13   certified) have a financial interest in convincing the Court to certify as large a class as possible.

14   Thus, to the extent the "fox guarding the hen house" metaphor were to have any application here, it

15   would apply equally to Plaintiffs. This is precisely why the Court needs to conduct an independent,

16   "rigorous analysis" of the Rule 23 prerequisites before certifying a class. (6/11/07 *Doe/SEIU* Order

17   at 4). And this is also why a class action cannot be settled without Court approval. *See* Fed. R. Civ.

18   P. 23(e). Again, "[t]he adequacy of the representation issue is now of critical importance in all class

19   actions and the court is under an obligation to pay careful attention to the Rule 23(a)(4) prerequisite

20   in every case." *Bishop v. Committee on Prof'l Ethics*, 686 F.2d 1278, 1288 (8th Cir. 1982) (quoting

21   C. Wright & A. Miller, Federal Practice and Procedure § 1765, at 616-17 (1972)).

22       This Court applied these very principles in the *Doe/SEIU* case when it construed the

23   adequacy of representation prerequisite. In that case, Abbott challenged SEIU's ability to serve as

24   an adequate class representative because its interests conflicted with the individual class members.

25   The Court certified the class, but only because "there is separate counsel for the individual Plaintiffs

26   and for SEIU." (6/11/07 Order at 15). Moreover, "[i]n an abundance of caution, . . . the Court

27   create[d] subclasses for individual class members and for institutional class members." (*Id.*).

28

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

1    This case likely involves more acute intra-class conflicts than those in *Doe/SEIU*.  A large

2    percentage of the direct purchasers in the putative class opted out before Plaintiffs even moved for

3    class certification.  This is an extraordinary and tangible showing that a material percentage of

4    putative class members already believe that the proposed class representatives would not adequately

5    represent their interests.  Yet, unlike in *Doe/SEIU*, it is unclear (but highly doubtful) that the intra-

6    class conflicts can be cured by creating subclasses with attorneys separately representing the

7    divergent interests of putative class members.  Given these unique circumstances, there should be no

8    question that Abbott has the right to take discovery on potential conflicts among putative class

9    members to inform the Court's decision on whether class certification is warranted here.

10    **3.    Plaintiffs Cannot Circumvent The Rule 23 Prerequisites By Claiming
         That Opt-Out Rights Will Cure Any Intra-Class Conflicts.**

11

12    According to Plaintiffs, this Court can neglect its obligation to address fundamental intra-

13    class conflicts at the class certification stage because if "any class member believed the case was

14    contrary to its interests, it could opt-out."  (Opp'n at 7, 21).  Again, Plaintiffs have misconstrued the

15    class certification prerequisites.  Rule 23 expressly precludes class certification unless, among other

16    things, the Plaintiffs will fairly and adequately protect the interests of the class, free from

17    fundamental conflicts. Fed. R. Civ. P. 23(a)(4).  The purpose of the opt-out mechanism is not to

18    relax this requirement.  Rather, it is designed to address "conflicts that are merely conjectural."

19    Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 3.30 (4th ed. 2002).

20    As the Ninth Circuit has made clear, "a right to withdraw from a class action is not always a

21    complete answer to an alleged conflict among class members."  *Lerwill v. Inflight Motion Pictures,*

22    *Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).  For example, the *stare decisis* effects of a judgment in a

23    class action "may frustrate existing class members' attempt to litigate independently."  *See*

24    *Fundamental Requirements for Class Suit*, 89 Harv. L. Rev. 1454, 1488 (1976).  Moreover, a class

25    member's decision to opt out "would deprive the court of an important source of information about

26    the class, and may therefore handicap the court's efforts to protect absentees."  *Id.*  For example, a

27    few opt-outs may be a symptom of a larger due process problem that the Court should have

28    addressed at the class certification stage.  *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1179

7

(9th Cir. 1977) ("I do not believe that a provision for opting out of the class provides an entirely satisfactory answer to the claim that a lead attorney failed to discharge that duty of representation.") (Kennedy, J., concurring).

The cases cited by Plaintiffs touting the opt-out option as a cure to potential conflicts did so only after finding that no conflicts actually existed, or that they were purely hypothetical. Again, the requested discovery will assist the Court in deciding whether the potential conflicts raised by Abbott constitute actual and fundamental conflicts that must be addressed before certification.

### 4.    The Unsworn Attorney Letters Carry No Weight.

Plaintiffs rely on nearly identically-worded and unsworn attorney letters purportedly on behalf of three of the largest putative class members in an attempt to demonstrate the absence of a fundamental intra-class conflict. But these letters have no bearing on Abbott's motion.

Even assuming that these three (out of more than 100) putative class members made a fully-informed waiver of fundamental intra-class conflicts and supported that waiver in sworn declarations – which, as discussed below, has not occurred – such evidence would not alter the Court's independent obligation under Rule 23 to determine rigorously whether an intra-class conflict exists. The *Valley Drug* district court on remand made this precise point when it found "insufficient" 23 affidavits from putative class members purporting to waive any intra-class conflicts. *In re Terazosin Hydrochloride Antitrust Litigation*, 223 F.R.D. 666, 667 (S.D. Fla. 2004). The court explained that Rule 23 does not authorize such waivers and, even if it did, those waivers could not be imputed to the other members of the putative class. *Id.*

Regardless, Plaintiffs here have submitted no sworn statements by any putative class member purporting to waive an intra-class conflict. Rather, they rely solely on *un*sworn attorney letters. As this Court has made clear: "Unsworn statements . . . cannot be considered as evidence." *Beverly v. Network Solutions, Inc.*, 1998 U.S. Dist. LEXIS 20453, *13 (N.D. Cal. Dec. 30, 1998). Similarly, "[a]rguments of counsel are not evidence." *Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1211 (Fed. Cir. 1987). Thus, these letters carry no weight whatsoever. They certainly do not reflect evidence of fully-informed waivers by all putative class members of the potential intra-class conflicts raised by Abbott.

8

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

**C.    At Most, Plaintiffs Have Shown A Split In Authority Concerning Downstream Discovery In The Class Certification Context, But The Weight Of The Authority And Common Sense Supports Abbott's Position.**

As Abbott discussed in its motion papers, Abbott cited several cases, including the only Circuit court to address the issue, authorizing downstream discovery in the class certification context.  In response, Plaintiffs rely heavily on the Supreme Court's decisions in *Hanover Shoe v. U.S. Machinery Corp.*, 392 U.S. 481 (1968), and *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), and other cases similarly holding that pass-on theories are irrelevant to antitrust injury.  As demonstrated below, however, neither the Supreme Court nor the Ninth Circuit – or, for that matter, any other Circuit – has precluded downstream discovery in the class certification context.  Although there is a split in authority among district courts addressing the precise issue raised here, this Court should adopt the line of cases allowing downstream discovery for the legitimate and limited purpose of informing the Court's decision on whether a critical class certification element has been satisfied.  Again, any doubt as to whether downstream discovery relevant to class certification is authorized given Abbott's showing of a potential intra-class conflict should be resolved "in favor of disclosure." *Soto*, 162 F.R.D. at 611.

**1.    Neither The Supreme Court Nor The Ninth Circuit Has Addressed The Issue Raised In Abbott's Motion.**

As explained in *Valley Drug*, "neither *Hanover Shoe* nor *Illinois Brick* addressed a party's burden to satisfy the certification prerequisites established by Rule 23(a)." *Valley Drug*, 350 F.3d at 1192.  Rather, these cases "simply stand for the proposition that a direct purchaser who passes on overcharges to his own customers nevertheless suffers cognizable antitrust injury and may sue to recover damages," which is "a distinctly separate question from the issue of whether class certification is appropriate where a fundamental conflict exists among the named and unnamed members of a class." *Id.*

Plaintiffs argue throughout their opposition brief that Abbott's discovery requests are inconsistent with the rationale behind *Hanover Shoe* and *Illinois Brick*.  But these Supreme Court decisions did not address a concern that *discovery itself* would "undermine the deterrent effect of the antitrust laws themselves." (Opp'n at 3).  Rather, those decisions merely held that a direct purchaser

9

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

1    suffers antitrust injury even if it passed on some or all of a monopolist's illegal overcharge to its own

2    customers (*Hanover Shoe*), and that indirect purchasers may not recover damages based on such

3    overcharges (*Illinois Brick*).

4    The "principal basis" for these decisions was the "perception that the attempt to trace the

5    complex economic adjustments to a change in the cost of a particular factor of production would

6    greatly complicate and reduce the effectiveness of already protracted treble-damages proceedings."

7    *Illinois Brick*, 431 U.S. at 732.  As the Court explained:  "Permitting the use of pass-on theories

8    under § 4 [of the Clayton Act] essentially would transform treble-damages actions into massive

9    efforts to apportion the recovery among all potential plaintiffs that could have absorbed part of the

10   overcharge from the direct purchasers to middlemen to ultimate consumers."  *Id.* at 737.

11   Another concern expressed by the Supreme Court in *Hanover Shoe* was that by permitting a

12   pass-on defense to the antitrust injury element, the only plaintiff left to enforce the antitrust laws

13   would be the end-user who "would have only a tiny stake in a lawsuit and little interest in attempting

14   a class action."  *Hanover Shoe*, 392 U.S. at 494.  As the Court later explained in *Illinois Brick*, this

15   "concern in Hanover Shoe for the effectiveness of the treble-damages remedy . . . rest[ed] on the

16   judgment that the antitrust laws will be more effectively enforced by concentrating the full recovery

17   for the overcharge in the direct purchasers rather than by allowing every plaintiff potentially affected

18   by the overcharge to sue only for the amount it could show was absorbed by it."  *Illinois Brick*, 431

19   U.S. at 734-735.

20   Abbott's discovery requests do not implicate these concerns.  First, Abbott's motion does not

21   in any way require the apportioning of damages among direct and indirect purchasers.  Rather,

22   Abbott's discovery requests focus solely on whether the interests of putative class members conflict

23   with regard to the competing theories of liabilities advanced by Plaintiffs and their expert.

24   Second, Abbott does not contest that direct purchasers are the only parties that could

25   potentially recover any overcharge damages.  Rather, Abbott's discovery requests are directed to the

26   "distinctly separate question" of whether class treatment is the proper mechanism for resolving each

27   of these direct purchasers' claims.  *Valley Drug*, 350 F.3d at 1192.  And any argument about the

28   chilling effects of discovery here is empty given that two classes of indirect purchasers, one

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

10

competitor, a putative class of direct purchasers and thirteen individual direct purchasers have already filed suit. For these reasons, the Eleventh Circuit properly found that these cases did not "address[] a party's burden to satisfy the class certification prerequisites established by Rule 23(a)." *Valley Drug*, 350 F.3d at 1192.

Similarly, the Ninth Circuit has not yet opined on the issue raised in Abbott's motion. None of the Ninth Circuit decisions cited in Plaintiffs' opposition addresses whether downstream discovery is relevant to class certification. Four of those decisions simply applied the *Illinois Brick* rule to preclude recovery of antitrust damages by indirect purchasers, and only one of those four even involved a class action.[1] The other three Ninth Circuit cases cited by Plaintiffs did not even involve antitrust claims, and only generally addressed the class certification requirements.[2]

### 2.    The Weight Of The Relevant Authority Supports Abbott's Position.

As noted above, the only Circuit court to address the issue raised by Abbott's motion held in no uncertain terms that downstream discovery can be relevant to class certification, and that the district court's foreclosure of such discovery was reversible error. *Valley Drug*, 350 F.3d at 1190. On remand, the district court declined to re-certify the class after the parties engaged in downstream discovery, holding that the plaintiffs failed to show that no fundamental intra-class conflict exists. *In re Terazosin Hydrochloride Antitrust Litig.*, 223 F.R.D. 666, 668 (S.D. Fla. 2004).

Last year, in *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.*, 247 F.R.D. 156 (C.D. Cal. 2007), the Central District of California – the only court in the Ninth Circuit to touch on this issue – expressly adopted the Eleventh Circuit's rationale. It found that a fundamental

---

[1] *See Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, *18-*19 (9th Cir. 2008) (holding that individual indirect purchaser lacked standing under *Illinois Brick* to bring antitrust suit); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) (applying *Illinois Brick*'s indirect purchaser rule to dismiss complaint); *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1214 (9th Cir. 1984) (holding that policy considerations of *Illinois Brick* did not apply to consumer class allegations of price-fixing conspiracy between dairy and grocery stores from who consumers purchased milk); *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 327 (9th Cir. 1980) (holding that *Illinois Brick* barred recovery by individual indirect purchasers).

[2] *See Cummings v. Connell*, 316 F.3d 886 (9th Cir. 2003) (class action challenging adequacy of *Hudson* notice to non-members informing them of "fair share" deductions for union's collective bargaining); *Epstein v. MCA, Inc.*, 179 F.3d 641 (9th Cir. 1999) (shareholder class actions relating to tender offer); *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) (securities fraud class actions).

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

11

1   conflict existed because "some plaintiffs claimed to be harmed by the same conduct that benefited

2   other members of the class."  247 F.R.D. at 177.[3]

3         Abbott also cited two other district court decisions that expressly permitted downstream

4   discovery in the class certification context.  *See Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l,*

5   *Ltd.*, 247 F.R.D. 253, 267-268 (D. Mass. 2008) ("Based on *Valley Drug*, this Court permitted

6   downstream discovery to determine whether a fundamental conflict exists between distributor class

7   members and end user class members."); *In re Urethane Antitrust Litig.*, 237 F.R.D. 454, 464 (D.

8   Kan. 2006) ("[T]he Court overrules Plaintiffs' objections that the information requested by

9   Defendants is not discoverable because discovery of downstream data in an antitrust case such as

10  this is prohibited.").

11        Yet another district court has permitted at least some downstream discovery from named

12  plaintiffs to determine whether they were adequate class representatives.  *In re Pressure Sensitive*

13  *Labelstock Antitrust Litigation*, 226 F.R.D. 492, 498 n.2 (M.D. Pa. 2005).  This case denied

14  additional downstream discovery, but only on the ground that the defendant, unlike Abbott, had "not

15  made an initial showing of the potential for a fundamental conflict of interest among class

16  members."  *Id.*; *see also In re Hypodermic Product Direct Purchaser Antitrust Litigation*, Nos. 05-

17  CV-1602 and 05-CV-4465, 2006 U.S. Dist. LEXIS 89353, *20 (D.N.J. Sept. 7, 2006) (concluding

18  that defendant "failed to initially produce any evidence to support its claim that it is entitled to

19  downstream sales data").  As discussed above, in Abbott's original motion and in accompanying

20  declarations, Abbott has made a sufficient initial showing of a potential conflict.

21        In their opposition, Plaintiffs nevertheless go to great lengths to create an illusion that there is

22  some "overwhelming weight of authority" against permitting downstream discovery in the class

23  certification context.  (Opp'n at 14).  This is not true.  Plaintiffs cite only five district court decisions

24  rejecting *Valley Drug*, three of which are unpublished and all but one of which are from courts

25  _____

26  [3] Although the court in *Allied Orthopedic* technically did not reach the issue of whether downstream discovery can be sought in the class certification context, it cited *Valley Drug* with approval and its holding clearly is consistent with such a conclusion. *Allied Orthopedic*, 247 F.R.D. at 177 ("[T]o this Court's knowledge, no circuit approves of class certification where some class members derive a net economic benefit from the very same conduct alleged to be wrongful by the named representatives of the class, let alone where some *named* plaintiffs derived such a benefit.").

27

28

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

1  within a single Circuit, the Third Circuit.[4]  In fact, two of these cases – *In re Wellbutrin SR Direct*

2  *Purchaser Antitrust Litigation*, 2008 U.S. Dist. LEXIS 36719 (E.D. Pa. May 2, 2008), and *Meijer,*

3  *Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 246 F.R.D. 293 (D.D.C. 2007) – are inapposite

4  because they involved denials of class certification, not discovery, which is the issue raised by this

5  motion.  Those cases also denied class certification because, unlike here, the allegedly

6  anticompetitive conduct that had created the potential class conflict had ceased.  *Wellbutrin*, 2008

7  U.S. Dist. LEXIS 36719 at *24 ("[T]he national wholesalers are no longer reaping the alleged

8  benefits of delayed generic entry."); *Meijer*, 246 F.R.D. at 304 n.10 (distinguishing from case where

9  plaintiffs "seek relief that could have varied prospective impacts on members of the putative class").

10      At most, therefore, Plaintiffs merely have identified a roughly even split among district

11  courts as to whether downstream discovery is relevant to class certification.  This Court should rule

12  in Abbott's favor and grant the requested discovery given:  (1) the liberal discovery standard;

13  (2) Abbott's specific showing of potential intra-class conflicts; (3) the Court's burden to rigorously

14  analyze these conflicts; and (4) the fact that the only Circuit court decision on this issue – a decision

15  cited favorably by the Central District of California – supports Abbott's position.

16      **D.    The Requested Discovery Is Narrowly Tailored And Would Not Impose Any Undue Burden on Plaintiffs.**

17

18      Abbott's discovery request is not unduly burdensome.  For purposes of this motion, Abbott

19  has agreed to seek only a limited set of data and documents relating to the prices and total annual

20  sales by the named Plaintiffs of Norvir, Kaletra, Reyataz and Lexiva.  This requested data is just a

21  subset of the various types of transactional sales data that Plaintiffs requested and Abbott already

22  produced in this litigation.  This transactional sales data produced by Abbott consists of a single

---

[4] Plaintiffs also cite two pre-*Valley Drug* decisions that do not address discovery at all.  *In re Buspirone Patent Litig.*, 210 F.R.D. 43, 57 (S.D.N.Y. 2002); *J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 225 F.R.D. 208 (S.D. Ohio 2003).  Only *J.B.D.L.* addresses the adequacy of representation requirement under Rule 23, and the defendant in that case presented a completely different theory of class conflict.  *J.B.D.L.*, 225 F.R.D. at 216 (claim that some direct purchasers bought large quantities of defendant's drug before the price increase and were able to resell at a greater profit after the price increases).  Plaintiffs also cite an unpublished decision from the Middle District of Florida that did not discuss the basis for denial of discovery and, in any event, was overruled by *Valley Drug*.  *In re Carbon Dioxide Antitrust Litig.*, MDL 940 (M.D. Fla. Dec. 10, 1992) (unpublished opinion).  The remainder of Plaintiffs' cases do not involve downstream discovery in the class certification context.

13

CASE NOS. C 07-5985, C 07-6010, C 07-6118 - ABBOTT LABORATORIES' REPLY IN SUPPORT OF ITS
MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

1   spreadsheet file for each year from 2002 to 2007 with information, by purchaser, of the quantity of

2   Norvir and Kaletra purchased and the total price paid for that purchase. Thus, as Abbott's expert

3   notes based on his experience in the pharmaceutical industry and in prior litigation, the discovery

4   Abbott seeks is unlikely to be unreasonably difficult to access. Supp. Hay Decl. at ¶¶ 26-27 (Ex. A).

5       Plaintiffs nevertheless claim that Abbott is seeking through its discovery requests "a massive

6   amount of data and documents."[5] (Opp'n at 19). The party opposing discovery must present

7   specific evidence that the requests are unduly burdensome. *Jackson v. Montgomery Ward & Co*.,

8   173 F.R.D. 524, 528-29 (D. Nev. 1997). That party "must state *specifically* how [the discovery] is

9   overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence

10  revealing the nature of the burden." *Thomas v. Hickman*, 2007 U.S. Dist. LEXIS 95796, *27-*28

11  (E.D. Cal. Dec. 5, 2007) (emphasis added). Mere statements by counsel that "requests are overly

12  broad, burdensome, or oppressive, are waived," and the mere fact that discovery requests will

13  "involve expense or consumption of time does not necessarily render it unduly burdensome." *Id.*

14      To support their claims of burden, each Plaintiff submitted three nearly-identically-worded

15  declarations. Each of the declarants attests that gathering and producing the requested information

16  "would entail significant expense and burden" and would be "extremely expensive, time-consuming,

17  and laborious." *See, e.g.*, Doud Decl. at ¶ 5. Their only support for that bald assertion, however, is

18  the vague statement that responding would require Plaintiffs "to review tens (if not hundreds) of

19  thousands of transactions" reflecting sales to "hundreds of customers," and gather "paper and

20  electronic records from a number of sources." *See, e.g.*, *id.*

21      These declarations do not satisfy the requirement of providing specific evidence of an undue

22  burden.[6] First, and notably, not one of the declarants attests to having personal knowledge of the

---

23  [5] Plaintiffs complain about certain third-party subpoenas served by Abbott. Putting aside whether

24  Plaintiffs even have standing to challenge those subpoenas, those subpoenas are not presently before
    this Court. In any event, Abbott has agreed with Plaintiffs' counsel to stay enforcement of requests

25  for downstream discovery in those subpoenas pending resolution of this motion.

26  [6] The unsworn attorney letters fare worse. Those letters make nearly identical assertions concerning
    the purported burden of complying with Abbott's subpoenas. But, as this Court has noted, "[b]ald

27  statements of counsel that a subpoena is unduly burdensome, unsupported by affidavits or evidence,
    are unhelpful." *Micron Tech. v. Tessera*, 2006 U.S. Dist. LEXIS 42076 (N.D. Cal. June 14, 2006);
    *see also Truswal Systems,* 813 F.2d at 1211 ("We reject the unsupported statements of counsel . . .

28  that the subpoena is overly broad and thus burdensome. Arguments of counsel are not evidence.").

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

14

record-keeping or the electronic data storage systems employed by their companies.  *See* Fed. R. Civ. Proc. 56(e) (requiring that affidavits "be made on personal knowledge . . . and show that the affiant is competent to testify on the matters stated").  Second, the few "burdens" that are described in these declarations cannot credibly be characterized as unusual or burdensome.  Nor are they likely to impose any greater expense or burden than that Abbott experienced in gathering and producing its own transactional sales data.  Third, it defies logic to believe that Plaintiffs do not readily maintain accessible data on the quantity and prices of the drugs they have sold.  Supp. Hay Decl. at ¶¶ 26-27.  Fourth, Plaintiffs' arguments about the burden of producing this information is belied by the fact that they collectively purchase less than 1% of all the Norvir and Kaletra purchased in the United States.  Hay Decl. at ¶ 15.

Finally, even if Plaintiffs could establish that production of the requested discovery was burdensome, Rule 26(b)(2)(C) requires that weighing of the benefits and burdens of discovery must "tak[e] into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."  Plaintiffs are seeking overcharges they claim could total in the "hundreds of millions" of dollars, and treble damages.  (Opp'n at 3).  Plaintiffs do not dispute they are also sophisticated companies, and that they and their counsel have substantial resources available to pursue this litigation.  As a result, their claims of burden are, at best, specious.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Abbott respectfully requests that the Court grant its Motion to Compel Production of Documents and Interrogatory Responses.

Dated: May 30, 2008                WINSTON & STRAWN LLP


By:    /s/ Charles B. Klein
         Attorneys for Defendant
         ABBOTT LABORATORIES

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703